# HUGH A. DRANE, INDEPENDENT EXECUTOR V. JEFFERSON STANDARD LIFE INSURANCE COMPANY ET AL.

No. 7860.   Decided April 8, 1942.
Rehearing overruled May 13, 1942.
(161 S. W., 2d Series, 1057.)

*Winfrey & Goldberg,* of Dallas, for plaintiff in error, Hugh A. Drane, Independent Executor of the Estate of Dorothy A. Drane.

For one to have an insurable interest in the life of the insured he must be either a relative of the insured or legally and morally depended upon the insured for support. A mere

expectancy of pecuniary benefits from the continued life of the insured was not sufficient to establish such an insurable interest in the life of the insured as to warrant the payment of the policy to him as the beneficiary. 2 Couch Cyc. Ins. Law, sec. 390; National Life & Acc. Co. v. French, 144 S. W. (2d) 653; Reed v. Smith, 120 S. W. (2d) 302; Wilke v. Finn, 39 S. W. (2d) 836.

The insurance company, by its delay and inaction, forfeited its right to file a bill of interpleader and was not entitled to its attorney's fees. Erie Ry. Co. v. Tompkins, 304 U. S. 64, 58 Sup. Ct. 817, 114 A. L. R. 318 note; New York Life Ins. Co. v. Veith, 192 S. W. 605.

*Beauford H. Jester*, of Corsisana, and *Hamilton, Lipscomb, Wood & Swift, of Dallas,* for defendants in error.

Harry Eugene Ezell, Jr., under the undisputed evidence, had an insurable interest in the life of Dorothy A. Drane because he had a reasonable expectation of pecuniary benefit and advantage to be derived from the continued life of Dorothy A. Drane. Taylor v. Travelers Insurance Co., 39 S. W. 185; American Natl. Life Ins. Co. v. Wallace, 210 S. W. 859; Wilton v. New York Life Ins. Co., 78 S. W. 403.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

Hugh A. Drane filed this suit as independent executor of the will of his sister, Dorothy A. Drane, deceased, against (1) Jefferson Standard Life Insurance Company, a corporation, (2) Harry E. Ezell, Sr., individually and as a guardian of the person and estate of Harry E. Ezell, Jr., a minor, and (3) Harry E. Ezell, Jr., on two life insurance policies executed and delivered by said insurance company on the life of said Dorothy A. Drane. The insurance company answered admitting liability but alleged the proceeds were being claimed by Harry E. Ezell, Jr., who was named in the policies as beneficiary, and by Drane, as executor aforesaid, and that it was ready to pay the same to whomever the court should find entitled thereto. The Ezells answered claiming the proceeds in behalf of Ezell, Jr., as the named beneficiary. The trial court found, in the main, for Ezell, Jr. From his judgment both Drane, as executor, and the Ezells appealed to the Court of Civil Appeals, at Dallas,

which affirmed the judgment. 146 S. W. (2d) 526. Both applied for the writ of error and both applications were granted.

### I. Drane's Appeal.

Drane's appeal, here admirably presented on ten points of error, raises three questions for our determination, namely (1) whether Ezell, Jr., had an insurable interest in the life of Dorothy A. Drane; (2) the correctness of the judgment in allowing attorney's fees to the insurance company and disallowing attorney's fees and statutory penalties to Drane; and (3) whether a letter written by Miss Drane to Ezell, Jr., two days before her death was admissible under the "Dead Man's Statute."

Although not related by blood or marriage to Ezell, Jr., nor indebted to him in any way, Miss Drane named him as beneficiary in two insurance policies totaling $10,510 and providing for double indemnity in the event of accidental death. Her executor contends that her beneficiary is not entitled to the money because he had no insurable interest in her life. If this contention is correct it would be contrary to public policy to allow Ezell, Jr., to recover.

Those held to have an insurable interest in the life of another fall into three general classes: (1) one so closely related by blood or affinity that he wants the other to continue to live, irrespective of monetary consideration, 24 Tex. Jur., sec. 70; (2) a creditor, Livesay v. First Natl. Bk. (Com. App.), 57 S. W. (2d) 86, 91 A. L. R. 873; and (3) one having a reasonable expectation of pecuniary benefit or advantage from the continued life of another, Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U. S., 457, 24 Law Ed. 251, quoted with approval in Equitable Life Ins. Co. v. Hazelwood, 75 Texas, 338, 12 S. W., 621, 7 A. L. R. 217, 16 Am. St. Rep. 893.

Since Ezell, Jr., was in no way related to Miss Drane and was not her creditor, we have only to decide whether he had an insurable interest under the third classification, supra. Bluntly expressed, insurable interest, under that classification, is determined by monetary considerations, viewed from the standpoint of the beneficiary. Would he regard himself as better off from the standpoint of money, would he enjoy more substantial economic returns should the insured continue to live; or would he have more, in the form of the proceeds of the

policy, should she die? Therefore it is said that if the situation is such that he might be led to conclude that he would profit by her death, the policy contract is void as to him since the public has a controlling concern that no person have an interest in the early death of another, an interest that may give rise to a temptation to destroy her life. Price v. Knights of Honor, 68 Texas, 361, 4 S. W. 633.

The record shows, without dispute, that for some fifteen years the deceased bought clothes for the beneficiary from one department store in Dallas, beginning very early in his life. "Every spring and fall" she went to that store and bought spring and fall clothing—a suit "and whatever else he needed." As he grew older, more and more clothing was thus provided for him. To illustrate, on January 26, 1937, the year of her death, the deceased bought for him an overcoat, a pair of slacks and a sweater; on January 29, an overcoat; on February 27, a shirt, a pair of hose and two collars; on March 21, a suit, a pair of slacks and two pairs of suspenders; on April 14, four ties; on July 9, three shirts; and on September 14, a tuxedo. The total cost of this clothing so bought at one store, during less than eight months, was $277.30. An employee of a drug store in Corsicana testified that from 1930 up to the time of Miss Drane's death Ezell, Jr., had the benefit of her charge account there, that they sold him what he wanted, charging the same to her account, and that he often paid the account with a check signed by her. The record further discloses, without dispute, that in 1930, he sustained an eye injury, which necessitated many visits to a specialist in Dallas over a period of two years. There was a trip every day "for months," then every other day, then about twice a week, then once a week, and finally once a month. Young Ezell's mother testified that these trips were made in Miss Drane's car, Miss Drane driving them up from Corsicana. The record further shows, without dispute, that from 1931 to 1934, his mother was afflicted with tuberculosis; that during that period she spent five months in San Angelo, seven months in San Angelo and Los Angles, fifteen months in El Paso and four months in Los Angeles, to restore her health, a total of thirty-one months; that during these absences the boy took all his clothes and his other personal effects and lived in the home of Miss Drane as one of the family, because under that arrangement, as his mother said, "he would feel as little as possible his mother's absence." On one occasion she gave him a "set of furniture." During his three years in high school she went almost daily in her car to take

him home. She frequently took him to Sunday school and church. She took him to California to see S. M. U. play in the Rose Bowl game. In the year of her death she took him on another trip to the west coast and into Canada, which lasted six weeks. When she met her death she was on her way to see him at College Station, where he was a freshman student at A. & M., and was taking him a radio, a cap and an apple pie.

The explanation for all this interest in young Ezell lies in the fact that he was born in the Drane home and that Dorothy Drane was in the house at the time of his birth; that she was his godmother when he was christened; and that affection came so early and grew so warm that he had· caller her "Auntie" all his life. This devotion was reciprocal and unwavering.

In determining insurable interest, each case must generally depend for its solution upon its own particular facts. Turner v. Davidson, 188 Ga. 736, 4 S. E. (2d) 814, 125 A. L. R. 401. In the light of the facts of this case, we think it would be unreasonable to say that young Harry Ezell could have no reasonable expectation of pecuniary benefit and advantage from Miss Drane's continued life. For thirty-one months she had mothered him while his mother was in the west fighting tuberculosis. For at least fifteen of his seventeen years of life she had provided him with perhaps more clothes than the average boy has. For months she had taken him in her car from Corsicana to Dallas to have his injured eye treated. After he got old enough better to understand what he saw, she had taken him on two extended trips, which doubtless were expensive to her but educational to him. And it is tragically significant that she was killed while on her way to see him and to take him articles both pleasing and necessary. Under such circumstances could this youth reasonable expect that her contributions to his pecuniary benefit and advantage would continue? We think so. We think that when Dorothy Drane was killed "his temporal affairs, his just hopes and well-grounded expectations of support, of patronage, and advantage in life" were impaired. Conn. Mut. Life Ins. Co. v. Schaefer, supra. It is inconceivable, under the facts of this record, that he would ever have been tempted to destroy her life in order to collect the proceeds of the two policies in suit. Consequently, we hold that he had an insurable interest in her life. See Smith v. Metropolitan Life Ins. Co. et al. (Civ. App.), 123 S. W. (2d) 956; Jackson v. Conn. Gen. Life Ins. Co. (Civ. App.), 131 S. W. (2d) 177 (er. dism.) ; 29 Am. Jur. sec. 353;

32 C. J. sec. 204, p. 1111; 2 Appleman Ins. L. & P., sec. 762, pp. 88 & 90, and footnotes 27 and 28.

We do not agree with Drane's contention that Miss Drane's gifts were "sporadic." They were with a studied regularity and system over a period of at least fifteen years. For the most part they were not luxuries. But if they were, they contributed to young Ezell's happiness and well-being and raised his standard of living above what it might otherwise have been, and we know of no authority which limits such contributions to necessaries in determining the issue of insurable interest. Nor do we see any merit in the suggestion that their cost may have been borne by Miss Drane's father. The fact remains that she provided them. Moreover, the record conclusively shows that she was possessed of considerable means in her own right.

■ We find no error in the judgment of attorneys fees in favor of the insurance company. It recognized that it was merely a stateholder and pleaded its willingness and readiness to pay the proceeds of the policies to whichever of the claimants the courts should order the same to be paid. We see nothing in the record to indicate any lack of good faith in its refusal to pay in the absence of a proper court judgment. See Wilke v. Finn (Com. App.), 39 S. W. (2d) 836, and authorities there cited; Simpson v. Clayton et al. (Civ. App.), 146 S. W. (2d) 504 (er. dism.).

■ Since Drane, executor, was not entitled to recover the proceeds of the two policies, it follows as a matter of course that he is not entitled to recover the statutory penalties and attorney's fees. Under 4736, R. S., 1925, it is only when the life insurance company is "liable therefor" (for the amount of the policy) that it can be held for the penalty and attorney's fees. Not being liable to Drane for the face value of the policies, it could not, in reason, be adjudged liable to him for a 12 per cent. penalty thereon or for attorney's fees incurred in suing therefor.

■ Drane's remaining two points of error relate to the admission in evidence of the letter written by Dorothy Drane to Harry Ezell, Jr., on Saturday before her death on Monday. The material parts of the letter are quoted in column 1, page 532, (146 S. W. 2d) of the opinion of the Court of Civil Appeals, supra. It is asserted that the trial court erred in admitting the letter in evidence because the same was a transaction with a

deceased person, proof of which is forbidden by the "Dead man's Statute," Art. 3716, R. S., 1925. The only facts established by the letter are Miss Drane's extreme devotion to young Ezell and her great solicitude for his welfare. We think these facts are amply shown by the other evidence in the case, most of which we have recounted. The trial being before the court without a jury, it follows that Drane was not hurt by the introduction of the letter. So it is unnecessary for us to decide whether its receipt in eivdence was improper since, if it was error, the same was harmless.

## II. *Ezell's Appeal.*

■ Each of the policies in controversy carried a rider of date April 8, 1937, providing that in the event of insured's death on or before January 7, 1947, the proceeds of the policy should be paid in equal monthly installments of $50.00, beginning on January 7, 1947, to Harry E. Ezell, Jr., if living on the due dates, otherwise to Harry E. Ezell, Sr., if living on the due dates. Each rider also contained this provision:

"Any portion of the proceeds remaining with the Company without provision as to final disposition shall be payable to the executors, administrators or assigns of the last beneficiaries who received benefits thereunder." Evidently recognizing that he had no insurable interest in the life of Dorothy Drane, Ezell, Sr., in open court disclaimed any interest in the proceeds of the policies, which fact removed him from the case as contingent beneficiary.

The trial court's judgment set up Drane, Executor, as contingent beneficiary in these words:

"It is further ordered, adjudged and decreed by the court that should the defendant Harry Eugene Ezell, Jr., die before the total of said respective payments, together with interest as compounded thereon, should be paid, then and in that event any unpaid balance thereof shall be due and payable to the plaintiff, Hugh A. Drane, Independent Executor of the estate of Dorothy A. Drane, deceased, as contingent beneficiary in such monthly installments." The Ezells excepted to this judgment and cross-assigned the above quoted portion of the judgment as error. We think their point is well taken. The Court of Civil Appeals correctly said that the question of contingent beneficiary was "not before us for adjudication and, as Harry

is still alive, could not have arisen" and that, therefore, said adjudication "was coram non judice, and void." However, that court stated that because the question was not before the court, it would make no adjudication in regard thereto. We think the attempt by the learned trial judge thus prematurely to adjudicate the question does present it for decision on appeal. Therefore, to avoid confusion hereafter, we hold that the trial court's judgment that Drane, Executor, shall become beneficiary upon the death of Ezell, Jr., is void. This leaves that issue to be determined when the contingency of the death of Ezell, Jr., shall have occurred, under the circumstances which may then exist. The contingency, of course, may never arise. We expressly disclaim any expression of opinion as to whether Drane, Executor, will become beneficiary in the event it does arise.

Ezell asserts that he is at this time vested with full title to the entire funds represented by the proceeds of the two policies. We think that to hold that he is presently so vested with unrestricted title would be wholly to abrogate plain provisions of the policies, so we overrule the point.

■ The remaining question is whether the proceeds of the policies payable because of Miss Drane's accidental death are due now in a lump sum or are to be paid in monthly installments for ten years beginning January 7, 1947. The cardinal principle to be applied to the construction and interpretation of insurance policies is that the intention of the parties should control 29 Am. Jur., sec. 172; and see Smith, Adm., v. Crosby, 47 Texas 121. Since one party to the policy contracts, the insurance company, apparently is not interested in this phase of the case one way or the other, it would seem that the question may be determined by the intention of the insured, if that can be ascertained.

Each of the policies agrees to pay the proceeds, $5,510 and $5,000, respectively, on proof of insured's death as per attached rider of date April 8, 1937. As already noted, each rider provides that "the proceeds of this policy shall be paid in a series of equal monthly installments of $50.00 each" to Harry E. Ezell, Jr., "if living on the due dates." Also attached to each policy is a "double indemnity" rider by the terms of which the insurance company agrees to "pay the beneficiary an additional amount equal to the face amount of this policy" if insured's death should result from bodily injuries effected through external, violent and accidental means. Although it is not directly

established by the evidence, we think it may be assumed that this rider was attached to each original policy when the same was executed and delivered, because each rider provides that double indemnity benefits may be discontinued by written request of the insured, in which event "the premium thereafter will be reduced" by $8.27 and $7.50 yearly, respectively, which is declared to be the additional premium charged therefor. Moreover, each rider is undated. We think this clearly shows that that riders in question were delivered contemporaneously with the policies.

When the insured died in an automobile accident, the additional amounts which thereby became due on each policy became additional "proceeds" thereof, and we think its payment is undoubtedly governed by the rider providing for monthly payment "of the proceeds of this policy" in installments beginning January 7, 1947. If there be a conflict between the policy and the rider, the latter controls, especially since its provisions are more specific. 29 Am. Jur., sec. 162.

If the contracts were ambiguous and we were to resort to parol evidence to determine Miss Drane's intention in this respect, we think the same is very clearly shown in the testimony of Mark H. DeWitt, who had been the insurance company's district manager at Corsicana for nearly seventeen years. He said he had advised with Miss Drane on different occasions about both policies; that the last occasion was in December, 1936, when she said that provision had already been made for young Ezell's education; that she wanted him "to have a hundred dollars a month for at least ten years after he finished his interneship and had begun the practice of medicine"; that she wanted indemnity policies that would mature in ten years from the date when he was supposed to "get through, which would be 1947 or about that date," and that pursuant to this conference, the installment riders were attached to both policies. Undoubtedly, then, Miss Drane's wish was that the proceeds of the policies should be paid in monthly installments to young Ezell to take care of him during his "lean" years as a practicing physician, which she estimated would begin in 1947, his eduction being, as she said, already otherwise provided for.

We think the trial court was correct in deciding that the double indemnity proceeds for accidental death would be payable to Harry E. Ezell, Jr., in monthly installments beginning January 7, 1947, so we overrule the point of error complaining thereof.

It follows from what has been said that we affirm the judgments of the courts below, except that the trial court's judgment is modified to the extent of eliminating therefrom the portion making Hugh A. Drane, Independent Executor of the Estate of Dorothy A. Drane, deceased, contingent beneficiary of any monthly installments that may be due on the policies in suit in the event of the death of Harry Eugene Ezell, Jr., before all the same shall have been paid.

Judgments of the trial court and of the Court of Civil Appeals modified and, as modified, affirmed.

Opinion adopted by the Supreme Court April 8, 1942.

Rehearing overruled May 13, 1942.