**Shearn MOODY, Jr., Appellant,**

v.

**EMPIRE LIFE INSURANCE COMPANY OF AMERICA et al., Appellees.**

**No. 5136.**

Court of Civil Appeals of Texas, Eastland.

Aug. 10, 1978.

Rehearing Denied Sept. 21, 1978.

Ronald E. Holub, Newman, Shook & Newman, Dallas, Frederick J. Lawson, Galveston, for appellant.

Thomas M. Pollan, Asst. Atty. Gen., Shannon H. Ratliff, McGinnis, Lochridge & Kilgore, James R. Irion, III, State Board of Ins., Austin, for appellees.

McCLOUD, Chief Justice.

At issue in the trial court was the validity of an assignment of the right to receive a portion of the "death proceeds" payable under three "term" life insurance policies. The total amount payable under the policies upon death of the insured was $12,000,000. Shearn Moody, Jr., the insured, the Receiver of Empire Life Insurance Company of America, the owner and beneficiary of the policies, and Protective Life Insurance Company, the assignee of the death proceeds, each sought a declaratory judgment as to the assignee's "insurable interest" in the life of the insured. Empire State Life Insurance Company, National Western Life Insurance Company, and North America Life Insurance Company, were made parties based upon allegations they were either the insurer or reinsurer of the policies in question. The insured, Moody, contended the assignment was void because the assignee had no insurable interest in Moody's life. In a nonjury trial, based on stipulated facts, the trial court found, among other things, the assignee had an insurable interest and the assignment was valid. We will reverse and dismiss the cause. The insurable interest issue did not present a justiciable controversy.

Shearn Moody, Jr., was the principal stockholder, chief executive officer, president, and chairman of the board of directors of Empire Life Insurance Company of America, which was domiciled in the State of Alabama. In 1963, Moody assigned to Empire a portion of his life estate interest in a trust created by the will of Libbie Shearn Moody. The assigned interest was thereafter carried by Empire as an asset. $12,000,000 in term life insurance was taken out on Moody's life with Empire named in the policies as owner and beneficiary. The policies were acquired because the trust asset assigned to Empire by Moody was only an interest in income from the trust for the life of Shearn Moody, Jr., and would terminate on Moody's death. The trust interest could not be carried as an asset except to the extent that its value was covered by insurance on the life of Moody. On or about December 31, 1972, National Western Life Insurance Company became the insurer under the policies in question. In 1972, Empire was placed in receivership and the Insurance Commissioner of Alabama was appointed Receiver. Thereafter, Herbert Crook was appointed Ancillary Receiver of Empire in the State of Texas. Both the Alabama and Texas receivership courts authorized the Receiver to enter into a Treaty of Assumption and Bulk Reinsurance with Protective. Under the Treaty of Assumption the Receiver agreed to transfer to Protective 40% of the life interest of Shearn Moody in 1/8th of the income from the Libbie Shearn Moody Trust. The Treaty, by amendment, provided that the Receiver would transfer "possession" of the insurance policies to Protective and assign to Protective the "right to receive death proceeds" from the policies in the amount of $4,350,000. The Treaty expressly stated that notwithstanding the transfer of possession of the policies to Protective, the Receiver would remain the owner and beneficiary of the policies. Included in the amendment was a provision for annual adjustment of the "assignment of proceeds of said policies . . . so that such assignment equals the then current value of the interest of Protective in the Libbie Shearn Moody Trust assigned hereunder . . . ." The amendment further provid-

ed for the assignment of the policies and the naming of Protective as owner and beneficiary under certain conditions. On May 12, 1975, an Agreement to Effectuate the Treaty of Assumption and Bulk Reinsurance was entered into by the Receiver for Empire and Protective. The Alabama receivership court approved the agreement and notice of implementation was given to the Texas receivership court. On May 13, 1975, the Alabama Receiver executed an assignment of all of Empire's right, title and interest in and to all proceeds due to Empire on account of the insurance policies in question on the life of Moody. The assignment provided that after payment in full to Protective as provided in the Treaty, the remaining proceeds should be forthwith paid over to the Receiver. The Alabama receivership court has approved the assignment. The life estate interest in the Libbie Shearn Moody Trust has been assigned a value of $4,250,000 on the books of Protective.

It is only the assignment of the right to receive these "death proceeds" that is in issue in the instant appeal. Much related litigation, however, has occurred. See: *Day v. State*, 489 S.W.2d 368 (Tex.Civ.App. —Austin 1973, writ ref'd n. r. e.); *Empire Life Insurance Company of America v. State*, 492 S.W.2d 366 (Tex.Civ.App.—Austin 1973, no writ); *Moody v. Jones*, 519 S.W.2d 536 (Tex.Civ.App.—Austin 1975, no writ); *Moody v. State*, 520 S.W.2d 452 (Tex. Civ.App.—Austin), aff'd per curiam, 547 S.W.2d 958 (Tex.1977); *Moody v. Crook*, 520 S.W.2d 958 (Tex.Civ.App.—Austin 1975, no writ); *Moody v. Moody National Bank of Galveston*, 522 S.W.2d 710 (Tex.Civ.App.— Houston (14th Dist.) 1975, writ ref. n. r. e.); *Moody v. State*, 538 S.W.2d 158 (Tex.Civ. App.—Waco 1976, writ ref. n. r. e.); *Moody v. State of Texas*, 539 S.W.2d 354 (Tex.Civ. App.—Beaumont 1976, writ ref'd n. r. e.); and *Moody v. State ex rel. Payne*, 295 Ala. 299, 329 So.2d 73 (1976).

This is an appeal of a severed issue. The only matter before the trial court and the only issue before us on appeal is the issue of "insurable interest". This is clear from the trial court's severance order. In its judg-

ment granting the relief sought by Herbert Crook, Ancillary Receiver of Empire Life Insurance Company and by Protective Life Insurance Company, the court declared:

"1. Herbert Crook, Ancillary Receiver of Empire Life Insurance Company of America, as statutory successor to Empire Life Insurance Company of America, has, and at all times pertinent to this suit had, a present insurable interest in the life of Shearn Moody, Jr., for the full amount of the life insurance policies on the life of Shearn Moody, Jr., in which Empire Life Insurance Company of America is the beneficiary, to-wit: Twelve Million Dollars ($12,000,000);

2. That the right to receive the proceeds from such policies upon the death of the insured is presently assignable by Herbert Crook, Ancillary Receiver, acting by and for the named beneficiary Empire Life Insurance Company of America, in an amount equal to Four Million Three Hundred Fifty Thousand Dollars ($4,350,-000), and that he may assign additional amounts equal to any greater value assigned by the Alabama Insurance Department to the life estate heretofore transferred to Protective under the Treaty of Bulk Reinsurance, heretofore approved by this Court;

3. That Neither Empire State Life Insurance Company, National Western Life Insurance Company or North America Life Insurance, nor any of them, have any defense to payment of such policies based upon any claim of a lack of insurable interest in Protective Life Insurance Company of Birmingham, Alabama, from and after the assignment of proceeds as declared valid in the preceding paragraph;

4. That Protective Life Insurance Company has an insurable interest in the life of Shearn Moody, Jr., for so long as it has title to the life estate interest of Shearn Moody, Jr., transferred to it under the Treaty of Bulk Reinsurance, and that such present insurable interest is equal to Four Million Three Hundred Fifty Thousand Dollars ($4,350,000); and

5. That Protective Life Insurance Company's insurable interest declared above shall increase in the event the life estate interest of Shearn Moody, Jr., is revalued by the Alabama Insurance Department at a greater amount than Four Million Three Hundred Fifty Thousand Dollars ($4,350,000).

All other relief not expressly granted herein is denied."

The issue between the parties in the trial was whether Protective, the assignee of Empire, had an insurable interest in the life of Moody. The Empire Receiver and Protective argue that Protective has an insurable interest under the rule announced in *Drane v. Jefferson Standard Life Ins. Co.*, 139 Tex. 101, 161 S.W.2d 1057 (1942), since Protective has "a reasonable expectation of pecuniary benefit or advantage from the continued life" of Moody. Moody argues the language relied upon by the Receiver and Protective is not applicable because as stated in *Drane,* the insurable interest under that classification is determined by monetary considerations as viewed from the standpoint of the beneficiary, and under the facts in the present case, possible death benefits of $12,000,000, Protective might be led to conclude that it would profit by Moody's death. Moody also points out that Article 3.49–1 of the Texas Insurance Code is not applicable because the insured, Moody, did not designate Protective as the beneficiary or owner under the policies.

■ The rule was established early in Texas that the assignee of an insurance policy must have an insurable interest in the life of the insured. *Price v. Supreme Lodge Knights of Honor,* 68 Tex. 361, 4 S.W. 633 (1887); *Cheeves v. Anders,* 87 Tex. 287, 28 S.W. 274 (1894). Article 3.49–1 of the Insurance Code expressly states that any beneficiary or owner designated by an insured of legal age in a legal reserve or mutual assessment company insurance policy shall have an "insurable interest" in the life of the insured. Sec. 2 of Article 3.49–1 provides that such insured may assign or transfer such policy or any interest therein, and the assignee shall have an insurable interest in the life of the insured. *McCain v. Yost,* 155 Tex. 174, 284 S.W.2d 898 (1955). Article 10.12 of the Insurance Code authorizes a member of a fraternal benefit society, to the extent permitted by the laws of the society, to designate that the benefits be paid to a person or entity having no insurable interest in the life of the member. *Castillo v. Canales,* 141 Tex. 479, 174 S.W.2d 251 (1943); and *Welch v. Woodmen of the World Life Ins. Soc.,* 175 S.W.2d 94 (Tex. Civ.App.—Fort Worth 1943, writ ref'd). The statutes do not, however, abolish the requirement of insurable interest where the statutes are inapplicable. *United Benefit Life Ins. Co. of Omaha v. Boyd,* 453 S.W.2d 332 (Tex.Civ.App.—El Paso), aff'd per curiam, 457 S.W.2d 893 (Tex.1970); *North River Insurance Co., New York, N. Y. v. Fisher,* 481 S.W.2d 443 (Tex.Civ.App.—Amarillo 1972, writ ref. n. r. e.). An insurable interest, when required, is necessary in Texas both at the time the policy is issued and when the benefits are payable. *Cheeves v. Anders,* supra, *Covington v. Covington,* 271 S.W.2d 849 (Tex.Civ.App.—Dallas 1954, no writ); 32 Tex.Law Rev. 346 (1954); 21 Tex.Law Rev. 650 (1943).

■ It would not be proper to determine the insurable interest issue prior to the time death benefits are payable under the policies in question. In declining to declare the insurable interest issue prior to the death of the insured, the court in *Roberts v. Southwestern Life Ins. Co.,* 244 S.W.2d 302 (Tex. Civ.App.—Dallas 1951, writ ref. n. r. e.), said:

"'. . . the courts will not render a declaratory judgment as to future rights, but just as in ordinary actions will wait until the event giving rise to the rights has happened, or, in other words, until the rights have become fixed under an existing state of facts.' 16 Am.Jur., sec. 18, p. 292. In major respects, a policy of insurance, like a will, speaks at time of death. *Cole v. Browning,* Tex.Civ.App., 187 S.W.2d 588. The beneficiaries named in these policies may predecease Mr. Roberts; the proceeds then devolving ipso facto upon the executors and administra-

tors of assured, with all questions herein raised becoming moot. If, on the other hand, appellants are living when the proceeds of policies are payable, it will be time enough to determine whether Allene Roberts is entitled to receive the same perforce of her asserted debtor-creditor relationship; if not, whether Flora Ghriskey, having an undoubted insurable interest, would be qualified to take in the place and stead of a primary but ineligible beneficiary."

Our Supreme Court in *Firemen's Ins. Co. of Newark, New Jersey, v. Burch*, 442 S.W.2d 331 (Tex.1969) pointed out that under the Texas Constitution the judicial power does not embrace the giving of advisory opinions. The court stated:

".  .  .  the Declaratory Judgments Act gives the court no power to pass upon hypothetical or contingent situations, or determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication."

After stating that "iffy" questions would lead to judicial wheel spinning for nothing, the court added:

"We can well appreciate that the parties would prefer a definite answer by this court to the questions posed by petitioner's points rather than to take an 'educated guess' based upon a study of our prior decided cases and authoritative materials as to what we would hold—as, if and when the questions are presented in justiciable form. However, the giving of advice as to proposed or possible settlements is not a judicial function. As a practical matter if for no other reason, this must be left to the profession."

In refusing to render an advisory opinion, the court in *Reuter v. Cordes-Hendreks Coiffures, Inc.*, 422 S.W.2d 193 (Tex.Civ. App.—Houston (14th Dist.) 1967, no writ), stated:

"We are of the opinion that the plaintiffs' proof in this record presents no 'actual, genuine, live, controversy.' A declaratory judgment in this instance would be in the nature of an advisory opinion that might or might not affect the future relations of the parties, that might or might not afford 'specific relief,' that might or might not affect the 'legal relations' of the parties. Whether or not it did so, in each instance, would have to be later determined by what, if any, subsequent action the parties took. 'The court will not declare rights on facts which have not arisen or adjudicate matters which are contingent, uncertain, or rest in the future. A future right or interest which is dependent on a contingency or event which may never happen is not the proper subject of a declaratory judgment.' 26 C.J.S. Declaratory Judgments § 28, p. 104."

See also: *California Products, Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780 (1960); *A. P. Simons Company v. Julian*, 531 S.W.2d 451 (Tex.Civ.App.— Eastland 1975, no writ); *Fort Worth Lloyds v. Garza*, 527 S.W.2d 195 (Tex.Civ.App.— Corpus Christi 1975, writ ref. n. r. e.); *Orange Ind. School Dist. v. West Orange Ind. School Dist.*, 390 S.W.2d 81 (Tex.Civ.App.— Beaumont 1965, writ ref. n. r. e.); *Laborers' Int. U. of N. A., Const., Etc. v. Blackwell*, 482 S.W.2d 327 (Tex.Civ.App.—Amarillo 1972, no writ); *Cowan v. Cowan*, 254 S.W.2d 862 (Tex.Civ.App.—Amarillo 1952, no writ).

The "death proceeds" in issue will only become payable if the policies in question are in effect at the time of Moody's death. The proceeds may never be payable. If the policies are in effect at Moody's death, the Empire Receiver or Protective may or may not, be the named beneficiary or owner at that time. The parties seek the answer to a hypothetical or contingent question. If the death benefits become payable, and if at that time Protective is the assignee of all or a portion of such proceeds, then the issue of Protective's insurable interest will present a justiciable controversy. Those contingent conditions have not occurred and may never occur.

There is no justiciable controversy. The judgment of the trial court is reversed and the cause is dismissed for want of jurisdiction.