**EMPIRE LIFE INSURANCE COMPANY OF AMERICA et al., Petitioners,**

v.

**Shearn MOODY, Jr., Respondent.**

**No. B–8027.**

Supreme Court of Texas.

July 18, 1979.

McGinnis, Lochridge & Kilgore, Shannon H. Ratliff, Austin, for petitioners.

Newman, Shook & Newman, Frank Newman, Dallas, Frederick J. Lawson, Sherman Oaks, Cal., Reynolds, Allen & Cook, Joe H. Reynolds, Houston, for respondent.

POPE, Justice.

Two questions are presented by this appeal. The first one is whether there is a justiciable controversy which can be decided under the Uniform Declaratory Judgments Act, Tex.Rev.Civ.Stat.Ann. art. 2524–1; the second one is whether an assignment by the owner of and beneficiary under life insurance policies was valid. After a trial to the court on stipulated facts, the trial court rendered a declaratory judgment that the assignment was valid, but the court of civil appeals dismissed the cause for want of jurisdiction, on the grounds that there was not a justiciable controversy. 570 S.W.2d 450. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

On June 27, 1963, Empire Life Insurance Company of America was incorporated and licensed to do business in the State of Alabama. From that time until June 22, 1972, Shearn Moody, Jr., was the principal stockholder, chief executive officer, president, and chairman of the board of Empire. Moody owned an undivided one-eighth life estate in the income from a trust created by the will of Libbie Shearn Moody, and on July 3, 1963, he assigned to Empire full and complete title to forty percent of his undivided one-eighth life estate.

Under accounting principles, Empire could not carry its forty percent interest in the Libbie Shearn Moody trust as an asset of the company except to the extent that its value was covered by insurance on the life of Mr. Moody, the life income beneficiary. This was so, because the income would necessarily terminate upon his death which could occur at any time. Mr. Moody, for the purpose of making his trust an asset of Empire, applied for and obtained life insurance policies on his life with three different companies. Those companies were Empire State Life Insurance Company, National Western Life Insurance Company, and North America Life Insurance Company. Moody designated Empire Life Insurance Company of America as the owner and beneficiary of the policies which had a total coverage of $12,000,000. After Empire became the beneficiary of the policies, it carried the Moody life estate interest as an asset at values that ranged from $14,213,440 in 1965 to $4,250,000 in 1975.

In 1972, Empire was experiencing serious financial difficulties and was placed in receivership by the Circuit Court for the Tenth Judicial Circuit of Alabama. At the time of the receivership hearing, Empire was insolvent in excess of $6,000,000. The Commissioner of Insurance of Alabama was appointed domiciliary receiver. Because of the assets located in Texas, an ancillary receivership was also instituted. After the domiciliary receiver determined that full rehabilitation of Empire was not feasible, he solicited proposals for assumption of the outstanding insurance policies of Empire.

Subsequently, an agreement was reached with Protective Life Insurance Company of Birmingham, Alabama. Its reinsurance plan was found to offer the best protection to the policy holders and other creditors of Empire. The agreement, entitled "Treaty of Assumption and Bulk Reinsurance," among other provisions, required Empire to transfer to Protective all of Empire's assets except Two Million Dollars ($2,000,000) which was to be used to pay the expenses of the receivership and to satisfy creditors for liabilities not assumed by Protective. The assignment of the Moody trust asset to Protective was upheld in *Moody v. Moody National Bank of Galveston,* 522 S.W.2d 710 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.). Empire also agreed to assign to Protective $4,350,000 of the proceeds from the life insurance policies. The receiver for Empire under its agreement with Protective would remain as the owner and beneficiary of the policies. At the time of the Treaty, the Moody trust interest owned by Empire was valued at $4,250,000, and it was the largest asset that Empire transferred to Protective.

Shearn Moody, Jr., instituted this suit in the nature of a declaratory judgment action. He named as defendants to his action the Empire Life Insurance Company of America, Protective Life Insurance Company, and the three insurers of his life. He asked for a declaratory judgment that would declare void Empire's assignment of the proceeds from the life insurance policies to Protective because Protective did not have an insurable interest in his life. Empire and Protective counterclaimed for declaratory relief that the receiver has a present insurable interest in the life of Moody, that the receiver has the power to assign to Protective his right to receive $4,350,000 of the insurance proceeds and that Protective has a present insurable interest.

The trial court sustained Empire's and Protective's claims and rendered judgment declaring that:

1. Herbert Crook, Ancillary Receiver of Empire Life Insurance Company of America, as statutory successor to Empire Life Insurance Company of America, has, and at all time pertinent to this suit had, a present insurable interest in the life of Shearn Moody, Jr., for the full amount of the life insurance policies on the life of Shearn Moody, Jr., in which Empire Life Insurance Company of America is the beneficiary, to-wit: Twelve Million Dollars ($12,000,00);

2. That the right to receive the proceeds from such policies upon the death of the insured is presently assignable by Herbert Crook, Ancillary Receiver, acting by and for the named beneficiary Empire Life Insurance Company of America, in an amount equal to Four Million Three Hundred Fifty Thousand Dollars ($4,350,000), and that he may assign additional amounts equal to any greater value assigned by the Alabama Insurance Department to the life estate heretofore transferred to Protective under the Treaty of Bulk Reinsurance, heretofore approved by this Court;

3. That neither Empire State Life Insurance Company, National Western Life Insurance Company or North America Life Insurance, nor any of them, have any defense to payment of such policies based upon any claim of a lack of insurable interest in Protective Life Insurance Company of Birmingham, Alabama, from and after the assignment of proceeds as de-

clared valid in the preceding paragraph;

4. That Protective Life Insurance Company has an insurable interest in the life of Shearn Moody, Jr., for so long as it has title to the life estate interest of Shearn Moody, Jr., transferred to it under the Treaty of Bulk Reinsurance, and that such present insurable interest is equal to Four Million Three Hundred Fifty Thousand Dollars ($4,350,000); and

5. That Protective Life Insurance Company's insurable interest declared above shall increase in the event the life estate interest of Shearn Moody, Jr., is revalued by the Alabama Insurance Department at a greater amount than Four Million Three Hundred Fifty Thousand Dollars ($4,350,000).

### There Is a Justiciable Controversy

The court of civil appeals viewed the issues in this case as hypothetical and contingent ones and, acting on its own motion, reversed the judgment of the trial court and ordered a dismissal of the cause for want of jurisdiction. This judgment was made in error.

In *Firemen's Ins. Co. of Newark, New Jersey v. Burch,* 442 S.W.2d 331 (Tex. 1969), this court reiterated the long standing rule that the judicial power does not embrace the giving of advisory opinions. *California Products, Inc. v. Puretex Lemon Juice, Inc.,* 160 Tex. 586, 334 S.W.2d 780 (1960); *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641 (1933). A judgment under the Uniform Declaratory Judgments Act depends on a finding that the issues are not hypothetical or contingent, and the questions presented must resolve an actual controversy, although such questions may in the future require adjudication.

There is an actual, live, and genuine controversy in this instance, and all of the parties to this appeal so contend. Protective's ownership of the forty percent of Shearn Moody, Jr.'s life estate in one-eighth of the Libbie Shearn Moody trust income is not in question. *Moody v. Moody National Bank of Galveston, supra.* There is, however, a very present controversy whether Protective's ownership of that part of the Libbie Shearn Moody trust may be carried as an asset worth $4,250,000, as Protective urges or as an asset of uncertain or no value. When Mr. Moody instituted this suit seeking a declaration that Protective had no insurable interest in his life, the validity of Protective's right to a portion of the proceeds in the three life policies was drawn in question. The solution of that issue has significant legal and financial consequences. The validity of Protective's reinsurance package affects the financial strength and soundness of Protective in the event the Shearn Moody, Jr., asset is disallowed because there is no valid insurance on his life. The ability of Protective to service Empire's policy holders' contracts which it agreed to do, is also brought in question. The financial strength to satisfy policy commitments, such as the satisfaction of cash surrender values, fulfillment of loan provisions of policy holders, and the payment of insurance benefits are presently affected by Protective's possible loss of $4,250,000 as an asset. *See Moody v. State,* 539 S.W.2d 354 (Tex. Civ.App.—Beaumont 1976, writ ref'd n. r. e.). We view the issue of whether Empire's receiver has the authority to assign a portion of its right to receive proceeds to Protective to present a justiciable controversy under the Uniform Declaratory Judgments Act.[1] *See Salvato v. Volunteer State Life*

1. The Uniform Declaratory Judgments Act, Tex.Rev.Civ.Stat.Ann. art. 2524–1, provides in pertinent parts:

Sec. 1. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

Sec. 2. Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a

*Ins. Co.,* 424 S.W.2d 1 (Tex.Civ.App.—Houston 1968, no writ); *Great American Ins. Co. v. Sharpstown State Bank,* 422 S.W.2d 787 (Tex.Civ.App.—Austin 1967, writ dism'd); *Ainsworth v. Oil City Brass Works,* 271 S.W.2d 754 (Tex.Civ.App.—Beaumont 1954, no writ).

### Protective Has An Insurable Interest in Shearn Moody, Jr.

■ Protective now owns, by assignment from Empire, Shearn Moody, Jr.'s life estate interest in the Moody trust. That interest was the major asset of Empire and from that asset substantial sums of money have been paid to Empire or its receiver.[2] The income from the trust will now be paid to Protective as long as Moody continues to live, but upon his death, the income from the trust will cease. Under the rule stated in *Drane v. Jefferson Standard Life Ins. Co.,* 139 Tex. 101, 161 S.W.2d 1057 (1942), Protective has a present insurable interest in the life of Moody to the extent of the asset value which the Alabama court approved as $4,250,000. *Moody v. State ex rel. Payne,* 344 So.2d 160 (Ala.1977), *cert. denied,* 434 U.S. 996, 98 S.Ct. 634, 54 L.Ed.2d 490 (1977); *Moody v. State,* 520 S.W.2d 452 (Tex.Civ.App.—Austin 1975), *writ ref'd n. r. e. per curiam,* 547 S.W.2d 958 (Tex.1977). The court in *Drane* recognized these three classes of persons who have an insurable interest in the life of another: (1) one so closely related by blood or affinity that he wants the other to continue to live, irrespective of monetary considerations; (2) a creditor; and (3) one having a reasonable expectation of pecuniary benefit or advantage from the continued life of another. The court explained the third category in relation to the case before it as follows:

> Bluntly expressed, insurable interest under (the third) classification, is determined by monetary considerations, viewed from the standpoint of the beneficiary. Would he regard himself as better off from the standpoint of money, would he enjoy more substantial economic returns should the insured continue to live; or would he have more, in the form of the proceeds of the policy, should she die?

■ The Pennsylvania Supreme Court held in *In re Gibbons Estate,* 331 Pa. 36, 200 A. 55 (1938), that where an assignment is merely of a life interest, the assignee has an insurable interest since the amount of income to be received from the assigned estate depends directly upon the duration of the assignor's life. Likewise, a tenant holding property or an estate during the life of another has an insurable interest in the latter's life. 3 Couch on Insurance 2d § 24:153 (1960).

Further support for this holding is expressed in the 1975 amendment of the Texas Insurance Code, Tex.Ins.Code Ann. art. 3.39, which states that a life insurance company may invest in certain life income interests provided satisfactory evidence is presented that the life income interest is supported by life insurance in an amount not less than its admitted value.

---

Statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, Statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

\* \* \* \* \* \*

Sec. 5. The enumeration in Sections 2, 3, and 4 does not limit or restrict the exercise of the general powers conferred in Section 1, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty.

\* \* \* \* \* \*

Sec. 12. This Act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations;

and is to be liberally construed and administered.

2. Income from the trust was paid to Empire or its receiver in various years as follows:

| | |
|---|---|
| 1964 | $142,645.64 |
| 1965 | $151,368.76 |
| 1966 | $168,828.35 |
| 1967 | $199,344.78 |
| 1968 | $203,643.36 |
| 1969 | $208,404.94 |
| 1970 | $208,642.25 |
| 1971 | $211,551.70 |
| 1972 | $215,370.99 |
| 1973 | $216,648.96 |
| 1974 | $225,909.80 |
| 1975 | $234,367.93 |

The Treaty between Empire and Protective provides for the transfer of possession of the insurance policies to Protective and the assignment of the absolute and irrevocable right to receive proceeds in the amount of $4,350,000. The amount of the assignment is subject to adjustment as provided in a further provision of the Treaty. Notwithstanding the transfer of possession of the policies, the receiver of Empire will remain the owner and beneficiary of the policies. Empire continues, therefore, to have an insurable interest under the provisions of the Insurance Code. Tex.Ins.Code Ann. art. 3.49–1. Section 1 provides:

> Any person of legal age may apply for insurance on his life in any legal reserve or mutual assessment life insurance company and in such application designate in writing any person, persons, partnership, association, corporation or other legal entity, or any combination thereof, as the beneficiary or beneficiaries, or the absolute or partial owner or owners, or both beneficiary and owner, of any policy or policies issued in connection with such application; and with respect to any such policy or policies any such beneficiary or owner so designated shall at all times thereafter have an insurable interest in the life of such person. . . .

Moody applied for the policies in question and designated Empire as beneficiary and owner. As such, under the provisions of the statute, Empire "shall at all times thereafter have an insurable interest."

Article 21.28, Section 13, of the Insurance Code provides for the appointment of an ancillary receiver in this state. Such receiver has the right to possess the assets of the insurer in this state and has the same powers and is subjected to the same duties with respect to such assets as a receiver of a domiciliary insurer. Section 2 of Article 21.28 authorizes the receiver to take possession of the assets of such insurer and to deal with the same in his own name as receiver or in the name of the insurer as the court may direct. Under these provisions, the receiver was empowered to assign Empire's right to receive the insurance proceeds to Protective to the extent necessary to secure the life income asset.

Judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.