## AMERICAN CASUALTY & LIFE CO. v. CHAMBERS.

### No. 14522.

Court of Civil Appeals of Texas. Fort Worth.

April 30, 1943.

Rehearing Denied June 11, 1943.

Francis M. Chaney, of Dallas, and Fred H. Minor, of Denton, for appellant.

Gerald Stockard, of Denton, for appellee.

BROWN, Justice.

Appellant, American Casualty & Life Company, shown to be a statewide mutual life insurance company, issued a policy of insurance on the life of one Randall David Pugh, in which appellee, William A. Chambers, was named as beneficiary.

Pugh died and the said beneficiary brought suit to recover the face value of the contract, to-wit, $500; the defense urged is reflected in the five Points of Error presented in the brief and will be discussed hereinafter.

The cause being tried to the court, judgment was rendered for plaintiff.

Findings of fact and conclusions of law were made and filed by the court.

It was found that the beneficiary, Chambers, "signed" the application for insurance on the life of Pugh, the insured; that all questions in the application were answered truthfully and correctly by Chambers; that the policy was issued by the insurer on the basis of the application, and

same was delivered, with Chambers named as beneficiary; that Chambers paid all of the premiums due on the policy; that the insured was in good, sound health at the time the application was made and when the policy was issued and delivered; that the beneficiary had an insurable interest in the life of the insured; that the beneficiary was receiving substantial pecuniary benefits from the insured and had a reasonable expectation that such benefits would continue; that the insured was paying the beneficiary the sum of $20 per month when the policy was taken out and at the time of insured's death; that insured was indebted to plaintiff in excess of the face amount of the policy when the contract of insurance was issued and when the insured died; and that insured and the beneficiary had entered into an agreement that the beneficiary would carry the insurance so that the beneficiary might in part be repaid for the indebtedness that the insured owed the beneficiary; and the court concluded that the plaintiff-beneficiary was entitled to recover of the defendant the sum of $500.

The insurer having excepted to the judgment and given notice of appeal, brings the cause before us and contends, in his First Point, that the uncontradicted evidence shows that the beneficiary was not in any way related to the insured, and that no definite amount was shown to be due the beneficiary from the insured, and that the suit was brought solely for the benefit of the beneficiary, and that the relation of creditor and debtor did not exist between the beneficiary and the insured, and that no other beneficial interest in the life of the insured existed by reason of any special relationship between them, and that the contract of insurance was solely between the beneficiary and the insurance company, it was error for the trial court to enter judgment for the beneficiary because of a lack of insurable interest, and because it is against public policy.

The Second Point is briefed with the First, and in it appellant contends that the finding by the trial court that the insurance contract was entered into by the beneficiary, with the insurer, with the consent of the insured will not remove the cause of action from the rule announced by the Supreme Court in the case of Equitable Life Assurance Society v. Hazlewood, 75 Tex. 338, 12 S.W. 620 (meaning page 621), 7 L.R.A. 217, 16 Am.St.Rep. 893, to the ef-

fect that an insurance contract made and entered into by the beneficiary with an insurance company on the life of a third person, in whose life the beneficiary has no beneficial interest except that of a creditor, cannot be collected on for more than the extent of the debt owed to the beneficiary by the insured, and same is purely an indemnity contract in so far as the amount of liability of the insurer is concerned; and the court erred because, first, no relationship of creditor and debtor was shown to exist, and, second, if it did exist, no definite amount due to the beneficiary was shown, consequently a recovery, as in this case, for an amount more than the amount of the debt shown to exist is error and against public policy.

We find no merit in the first two points raised, and we are of opinion that the pronouncements in Equitable, etc., Society v. Hazlewood, supra, are not authority for denying the beneficiary the right of recovery in the instant case.

The Supreme Court held, in effect, that when the insurance is not contracted for by the person whose life is insured but by a creditor in his own name so that there is no party to the contract except the creditor and the insurer, it becomes immaterial what amount is contracted for because no more will be collected than such sum as will be sufficient to discharge the creditor's debt and such disbursements as he may have made on the policy.

The application for insurance shows that it was signed "Randle D. Pugh by W. A. Chambers", that it was filled out by the insurer's agent in the presence of Pugh, Mr. Chambers and Mrs. Chambers, and the agent testified that at that time he took an application for insurance from Pugh.

The evidence shows that Pugh lived in the home where Mrs. Chambers was reared for many years before Mr. and Mrs. Chambers were married; that she had known him for forty-nine years; that Pugh had no relatives, that he had told her he had no one except her; that he came to live with them about five years before he died; that he made no arrangement to pay any definite sum for his board and lodging (Mr. and Mrs. Chambers were conducting a hotel in Denton, Texas), that he would pay "just when he could".

The evidence shows that the customary charge for room and board was $30 per month, and that it cost Chambers about

$20 per month to furnish Pugh room and board.

It is further shown that for some six or eight months prior to Pugh's death his pension check had been raised to about $29 per month and that out of such checks he had been paying Chambers something each month.

A matter of simple mathematical calculation discloses that Pugh owed Chambers more than the face value of the policy.

We hold that the evidence before the trial court establishes the status of debtor and creditor; and we further hold that the evidence establishes the fact that Pugh owed Chambers far more than the face value of the policy and that, such being the case, it was not necessary for Chambers to prove the exact sum that was owing to him by the insured before he could recover.

Furthermore, we are convinced that the facts in this case show a relationship between the parties that is far more sacred than that of debtor and creditor, or even of simple friendship.

When Mrs. Chambers was asked what the relationship was between her and Mr. Pugh, she answered: "He was just to me * * * he was just one of the family. That is the way we had always looked on him. He had been in the home all of the time I was growing up and then when I was older and had married he was just around at different places. And then when he was getting older and he began to get his pension and the discomforts of the farm, he came back and came home. That is the way he said it."

This old man was more than seventy years of age when he died. He was without relatives; he was not the constituent member of any family with whom he had blood ties; he considered himself a member of the Chambers family; these were the persons he loved best, and he felt free "to come home" to them when the frosts of more than three score winters had fallen upon his head, and burdens of more than three score years had stooped his shoulders.

This court will not, under such heart-appealing and human circumstances, look upon the status of these persons as that of mere debtor and creditor. While the insured was in fact debtor to Mr. and Mrs. Chambers, that relationship did not arise under the fact of cold and business-like dealings; there was something far more beautiful and abiding in the motives that brought this old man into the Chambers home, in his declining years.

The most recent pronouncement by our Supreme Court that, to our minds, covers the case before us, is found in Drane v. Jefferson Standard Life Ins. Co. et al., 139 Tex. 101, 161 S.W.2d 1057, and we cite such case as supporting our conclusions.

Appellant cites Border State Life Ins. Co. v. Monk et al., 103 S.W.2d 825, writ dismissed, but we find that the Court of Civil Appeals for the Eighth District, in affirming the case, cited Pacific Mutual Life Ins. Co. v. Williams, 79 Tex. 633, 15 S.W. 478, and also Provident Life Ins. & Inv. Co. v. Baum, 29 Ind. 236, from which opinion the following is quoted: "It is not for the insurance company, after executing such a contract, and agreeing to the appointment so made, to question the right of such appointee to maintain the action. If there should be a controversy as to the distribution among the heirs of the deceased, of the sum so contracted to be paid, it does not concern the insurers. The appellant contracted with the insured to pay the money to the appellee, and upon such payment being made, it will be discharged from all responsibility. So far as the insurance company is interested, the contract is effective as an appointment of the appellee to receive the sum insured."

We are of opinion that the insurer in the case before us is not so much interested in paying the proceeds of the policy to the rightful owners as it is to defeat payment in its entirety.

The third point contends that the insurer is a statewide mutual company, and that, under the law giving it life, it can only issue policies to members of the association upon assessments of such members, and that the facts of the instant suit show that the insurer issued the policy in controversy upon the life of a person not a member, because it appears that the application for the insurance contract was signed by the beneficiary and all liability was by the beneficiary, and that the insured was not a party to the contract and the policy is therefore illegal and void.

The facts show that the application was signed by Chambers writing the name of the applicant "by" him, Chambers; that it was done in the presence of the applicant, and the agent of the insurer, and that it was in fact the insured's application.

It is readily seen that the insurance contract was not issued by the insurer until the application was received by it and duly inspected, and the application specifically gives the insurance company 30 days in which to investigate the desirability of the risk, and even longer if it is unable to get the "desired full information".

The insurer had in its possession the application executed as the facts now show it to have been and it will not now be heard to say that the contract is void because of the manner in which the application was signed.

The fourth point is so closely akin to the third that we will not give the substance of it or discuss it.

The fifth point contends that the uncontradicted evidence shows that the insured's name was signed to the application by the beneficiary, who was the only party who contracted with the insurer and, although the policy indicated on its face a contract between the insured and the insurer, the doctrine of waiver and estoppel to a defense of the suit by a beneficiary who has no insurable interest in the insured does not apply.

What we have said heretofore is an answer to this contention.

All points and the assignments of error to which they are germane are overruled and the judgment is affirmed.