The **NORTH RIVER INSURANCE COM-PANY, NEW YORK, NEW YORK, Appellant,**

v.

**Virginia FISHER et al., Appellees.**

No. 8270.

Court of Civil Appeals of Texas, Amarillo.

May 15, 1972.

Rehearing Denied June 12, 1972.

Gibbins & Spivey, Bob Gibbins, Austin, for appellant.

Cox & Hurt, Steve L. Hurt, Plainview, for appellees.

REYNOLDS, Justice.

This litigation resulted from the refusal of an insurance company to pay the accidental death benefit provided for the insured's death in its policy procured without the knowledge of the insured by one named beneficiary who had no insurable interest in the life insured. The trial court granted summary judgment decreeing liability under the policy with the proceeds payable to the named beneficiary as trustee for the benefit of the decedent's estate, and this appeal ensued. Affirmed.

The recorded events preceding the suit are undisputed and to a great extent were stipulated. J. W. Walker contracted with Azzie Fisher to trim Walker's trees between the hours of 11 A.M. and 1 P.M. on May 29, 1970. On the morning of that day Walker called the Woods & Davenport Agency, talked with James Wallace Davenport and stated he would like to have an accident policy on Azzie Fisher. Davenport agreed to issue the policy. As re-

vealed by Walker's testimony given at a prior hearing and made a part of the summary judgment proof, the following then occurred:

"A Mr. Davenport asked me who would be the benficiary.

"Q What did you tell him?

"A. I told him I didn't know Azzie's wife's name. I didn't know for sure that he had a wife. And he said, in that case, we'll just make you the beneficiary. And I told him I was getting the policy for the benefit of Azzie's family, if he had one.

"Q Was that your intention?

"A Yes, sir."

A "trip accident and baggage policy" of The North River Insurance Company, New York, New York, was issued by the Woods & Davenport Agency and countersigned by James W. Davenport as "Licensed Resident Agent." The policy was effective at 10 A.M. on May 29, 1970, for one day, and named Azzie Fisher as insured and Mr. J. W. Walker as beneficiary with his relationship to the insured shown as "employer." The premium of eighty-five cents was paid by Walker. The policy provided schedules of payments for loss resulting directly and independently of all other causes from accidental bodily injury sustained by the insured and the maximum sum of $10,000.00 for loss of his life within 180 days after the date of accident. Provision was also included for the payment of medical expenses actually incurred not to exceed $1,000.00 as the result of any one accident.

About mid-day of the same day while trimming the trees, Fisher sustained an accidental bodily injury from which he died on October 27, 1970, 151 days after his accident. Fisher left surviving him his widow, Virginia Fisher, who qualified as community administratrix, his son, Norland J.

Fisher, and his daughter, Joe Lena Mitchell, who lived in the Fisher home.

The insurance company paid $1,000.00 for medical expenses but refused to pay the accidental death benefit of $10,000.00. Fisher's widow and children and J. W. Walker, appellees here, then filed this suit against the appellant insurance company to recover the $10,000.00 death benefit, 12% statutory penalty and reasonable attorney fees. The undisputed facts are, and in fact it is conceded, that Walker never had an insurable interest in Fisher's life. Walker's interest as a plaintiff in the trial court was, and as an appellee here is, to receive the policy proceeds as the named beneficiary for the benefit of the decedent's estate. The opposing parties filed motions for summary judgment. The trial court denied appellant's motion and granted appellees' motion, decreeing that Walker, as trustee for the benefit of Fisher's estate, recover from the appellant insurance company the $10,000.00 policy death benefit proceeds, the statutory penalty and stipulated attorney fees.

The appellant insurance company has presented two assignments, alleging error in the denial of its motion for summary judgment and in the granting of appellees' motion. The gravamen of appellant's complaint is that the policy is void as to all parties because Walker was without an insurable interest in Fisher's life. Appellees' counterpoints are to the contrary, it being their position that while the policy may be void as to Walker as beneficiary, it is valid and enforceable as between the other appellees and the insurer.

 It is clear that Fisher, the insured, having no knowledge of the application for insurance by Walker, could not consent to the issuance of the policy, but the lack of Fisher's consent would not affect the insurable interest of the beneficiary, if in fact the beneficiary had an insurable interest in Fisher's life. Livesay v. First Nat. Bank of Lockney, Tex., 57 S. W.2d 86 (Tex.Comm'n App.1933). It is equally as clear that Walker was only the nominal beneficiary, named at the suggestion of appellant's agent when Walker, securing the policy for the benefit of Fisher's family, did not know the insured's family status, and that the real beneficiary was Fisher's estate. The surviving widow and children, who were entitled to receive Fisher's estate, had an insurable interest in his life. 32 Tex.Jur.2d Insurance §§ 106–107. Thus, the determinative issue is narrowed to the question of whether, under Texas law, the insurance policy is void simply because it was procured by Walker who had no insurable interest in the insured's life. We hold that this fact does not void the policy.

 Early in Texas jurisprudence, absent legislative declaration of State policy with reference to insurance matters,[1] the insurable interest rule was embraced. Generally, an insurable interest exists in one who has any reasonable expectation of pecuniary benefit or advantage from the continued life of another. Equitable Life Assur. Soc. v. Hazelwood, 75 Tex. 338, 12 S.W. 621 (1889). The rule has not always been stated in precise language, but as gleaned from the declarative pronouncements in Price v. Supreme Lodge Knights of Honor, 68 Tex. 361, 4 S.W. 633 (1887) and such sequent authorities as Cheeves v. Anders, 87 Tex. 287, 28 S.W. 274 (1894); Wilke v. Finn, 39 S.W.2d 836 (Tex.Comm'n App.1931); Shoemaker v. American Nat. Ins. Co., 48 S.W.2d 612

1. In 1931, by amendment that is the present V.A.T.S. Insurance Code, art. 10.12, the Legislature authorized a member of a fraternal benefit society, to the extent permitted by the society's rules, to designate one having no insurable interest as the beneficiary of the member's life insurance certificate. In 1953, the Legislature pronounced in V.A.T.S. Insurance Code, art. 3.49–1 that any beneficiary or owner designated in any legal reserve or mutual assessment company insurance policy procured by a person of legal age on his own life shall have an insurable interest in the life insured. Neither of these provisions is controlling here.

(Tex.Comm'n App.1932); Drane v. Jefferson Standard Life Ins. Co., 139 Tex. 101, 161 S.W.2d 1057 (1942); 2 Appleman, Insurance Law and Practice, Insurable Interest § 761; and Couch on Insurance 2d § 24:118, the rule applicable to the question presented here may be stated thusly: The almost universally accepted rule is that a policy procured by a person having no insurable interest in the life insured is void as against public policy only if it is procured for the sole benefit of one not interested in the life insured. The public policy referred to is that no inducement shall be offered to one to take the life of another. Cheeves v. Anders, supra. This inducement—namely, the pecuniary interest a beneficiary without an insurable interest in the life insured has in achieving the premature death of the insured—is not presumed present where the real beneficiary in fact has an insurable interest. Except as herein before marginally noted, the law of Texas prohibits all persons from being beneficiaries of life insurance policies unless such persons have an insurable interest in the insured life. Castillo v. Canales, 141 Tex. 479, 174 S.W.2d 251 (1943). Consequently, the insurable interest rule is addressed to the real beneficiary of the policy and not to the one who may have procured it and, under all Texas authority, has no application to the role of Walker in securing the policy. As the mere conduit through which the insurance was effected, Walker, as the nominal beneficiary only, could have no pecuniary benefit or advantage from the termination of Fisher's life that would void the policy.

In the Supreme Court's opinion in Cheeves v. Anders, supra, Justice Brown surveyed the insurance law of Texas in 1894, and there penned the principles that still are applicable today to the facts of the present case in these words:

"* * * Applying this salutary [insurable interest] rule, the conclusion has been reached by our court that such policy cannot be beneficially owned by any one not interested in the life insured, whether the policy be taken out in the first instance by the non-interested party, with or without the consent of the insured, or whether he acquired the policy by assignment * * *.

"When an insurance company has issued a policy upon the life of a person, payable to one who has no insurable interest in the life insured, * * * the insurance company must nevertheless pay the full amount of the policy, if otherwise liable, because it has so contracted; and it is no concern of the insurer as to who gets the proceeds, except to see that it is paid to the proper parties, under its agreement. It is simply required to perform its contract, and the law will dispose of the money according to the rights of the parties [Pacific Mutual Life] Insurance Co. of California v. Williams, 79 Tex. 633, 637, 15 S. W. 478, and authorities cited. This rule does no wrong to the insurance company. It, having agreed to pay the money upon the death of a named person, ought not to be permitted to avoid liability upon its contract upon the ground that it has made an unlawful agreement, when that contract can be enforced in favor of a person who is in no wise concerned in the unlawful part of the transaction. * * * (W)hy should it be said that the policy issued by the company contrary to law should be held void as to it? The reason would seem to be equally strong to enforce the contract in favor of one who was entirely innocent of participation, as in favor of him who voluntarily places the insurance in the name of one who cannot lawfully receive it. If the insurance company may set up the illegality of such a contract, then the object of the law will be frustrated, and the making of such unlawful agreements by insurance companies will be encouraged, for they would thus be enabled to reap the benefit without incurring the risk of such business. If the insurer is held liable, and the payee in the policy is denied its benefits when unlawfully ob-

tained, both parties to the unlawful contract will be denied relief, and the beneficial objects of insurance upon the life be attained, by giving the benefits to the estate of the insured, and no inducement will be offered to destroy the life upon which the risk is placed."

The judgment of the trial court, which applied the criteria herein announced, is affirmed.