93 S.W.3d 657 (2002)
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, C.M. Owen, P.M. Donner, D.W. Sear, T.W. Brien, J.D. Lloyd, P.W. Murrell, M.J. Davis, J.H. Davies, R.A. Lissenden, R.J.H. Payne, J.M. Donner, D.R. Neil, V.W. Broad, A.P. Targett, A.J. Avery, P.G. Butler, P.J.M. Battle, R.J. Dackombe, J.W. Dendy, R.D. Hazell, J.B. Hose, J.P. Tilling, S.J. Burnhope, J.S. Darling, R.J. Morse, G.A. Morese, G.A. Argent, G.M. Chichester, D.A. Thomas, S.D. Chappel, B.P.D. Kellett, A.F. Whitbread, P.A. Minter, T.G. Green, B.P. Bartell, P.E. Holland, J.H. Bristow, and National Convenience Stores, Inc., Appellants/Cross-Appellees,
v.
Angela M. SMITH, Individually and as Next Friend of Brandon William Hendrix, A Minor, Appellees/Cross-Appellants.
No. 14-00-00391-CV.
Court of Appeals of Texas, Houston (14th Dist.).
December 5, 2002.
Edward C. Mainz, San Antonio, Daryl G. Dursum, Houston, Dan K. Horn, John M. Weaver, Irving, for appellants.
*658 Jeff Joyce, Michael D. Myers and Scott M. Clearman, Houston, for appellees.
Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

ORDER
PER CURIAM.
This Court issued its original opinions in this case on April 25, 2002. The parties filed a joint motion to abate the appeal and remand the case to the trial court for approval of a settlement involving the minor. We granted the motion and abated the appeal.
On September 23, 2002, the parties filed a joint motion to dismiss their respective appeals because the case has been settled and the trial court has approved the settlement. See Tex.R.App. P. 42.1. On October 3, 2002, this Court granted the motion. In our opinion of October 3, 2002, dismissing the appeal, we ordered the judgment of April 25, 2002 vacated, but we did not withdraw the Court's opinions issued on April 25, 2002. See Tex.R.App. P. 42.1(c) (in dismissing a proceeding, the court of appeals will determine whether to withdraw any opinion it has already issued).
On October 9, 2002, Angela M. Smith filed a motion for rehearing asking that the Court vacate and withdraw its opinions of April 25, 2002. On November 15, 2002, National Convenience Stores, Inc. and Certain Underwriters at Lloyd's, London filed a response to the motion for rehearing, taking no position on whether the Court should withdraw its opinions. We grant Angela M. Smith's motion.
Accordingly, we order the Majority, Concurring, and Dissenting Opinions issued April 25, 2002, in this case withdrawn.
BRISTER, C.J., dissenting.
SCOTT BRISTER, Chief Justice, dissenting on order withdrawing opinions.
This case presents facts almost identical to those in Tamez v. Certain Underwriters at Lloyd's, London, 999 S.W.2d 12 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). After six months of drafting, this court was prepared to issue three opinions on April 25, 2002: a majority opinion by Justice Fowler following Tamez, a dissenting opinion by Justice Seymore finding Tamez wrongly decided, and my concurring opinion that follows as an appendix.
A few days before issuance, appellees' counsel notified the court that the parties had reached an agreement to settle the case. Because a minor was involved, they could not settle the case without court approval. See Tex.R. Civ. P. 44; Byrd v. Woodruff, 891 S.W.2d 689, 705 (Tex.App.-Dallas 1994, writ dism'd agr.). This did not occur until four months later. The appeal was not rendered moot merely because a settlement was pending. See Castano v. American Tobacco Co., 84 F.3d 734, 737 n. 3 (5th Cir.1996) (refusing to grant motion to dismiss due to pending settlement). Accordingly, our opinions issued as scheduled.
Appellees' counsel now requests that we withdraw our opinions. See Tex.R.App. P. 42.1(c). As discussed in the appendix, I believe the very faulty reasoning of Tamez is being used to create a mass tort. Under these circumstances, the court does a disservice to the public and the law by exercising its discretion to withdraw the decisions in this case. See Tex.R.App. P. 47.4(b) & (c) (calling for publication if an opinion "involves a legal issue of continuing public interest" or "criticizes existing law"). Thus, I respectfully dissent.

APPENDIX

CONCURRING OPINION
As the trial judge whose summary judgment was reversed by this Court in Tamez *659 v. Certain Underwriters at Lloyd's, London, 999 S.W.2d 12 (Tex.App.-Houston [14th Dist.] 1998, pet. denied), I confess I remain unconvinced. I agree an employer must show an "insurable interest" in its employees; I disagree that term should be limited to the meaning it had in 1942. Perhaps in 1942, companies never expected to spend a dime when employees died on the job, except for "key men." If so, those days are over. Nevertheless, because Tamez governs this appeal short of en banc consideration, see O'Connor v. First Court of Appeals, 837 S.W.2d 94, 96 (Tex.1992) (stating decision of panel constitutes decision of the whole court unless court chooses to hear case en banc), I reluctantly concur.
Following its bankruptcy filing in 1991, National Convenience Stores, Inc. ("NCS") opted out of the Texas workers compensation system because of high premiums. Instead, NCS obtained liability insurance totaling $75 million to cover employee claims. This coverage included a deductible of $250,000 per claim. Rather than leaving this risk uncovered, NCS obtained a policy payable in that amount upon accidental death in the course of employment of any of its officers or employees.
In Tamez, a panel of this Court punished NCS for its prudence by requiring it to forfeit the entire policy benefit of $250,000 (even though it had already paid more than that to the Tamez family),[1] not to mention all premiums, and pay the plaintiffs' attorney's fees and interest as well. The panel found NCS had no insurable interest in the lives of its service-level employees because (1) the Texas Insurance Code was silent on the matter, and (2) it did not fit a 1942 definition of the term. I believe neither reason is persuasive, as set forth below.
The Expansion of Insurable Interests
This is not the first time Texas has brought up the rear in insurance practices. Texas was the last state that strictly limited insurable interests to the boundaries of the common law. See Kennedy v. Laird, 503 S.W.2d 664, 665 (Tex.Civ.App.-Houston [1st Dist.] 1973, no writ). With some resistance from the courts,[2] the Texas Legislature has repeatedly expanded insurable interests far beyond those limits:
 In 1921, the Legislature gave corporations and partnerships an insurable interest in their officers, stockholders, or partners. See Tex. Ins.Code art. 3.49.
 In 1931, the Legislature allowed members of fraternal societies to bestow an insurable interest on any person or business by simply naming them as beneficiary. See id. art. 10.01 et seq.; Castillo v. Canales, 141 Tex. 479, 485-86, 174 S.W.2d 251, 254 (1943). *660  In 1953, the Legislature granted the same broad power to all insureds to name any beneficiary they chose. Tex. Ins.Code art. 3.49-1, §§ 1, 2.
 In 1999, the Legislature declared that anyone (person or corporation) had an insurable interest in anyone else by simply obtaining their written consent. Id, art. 3.49-1, § 3.
There is no question the Legislature may expand the scope of insurable interests, or even discard the requirement altogether. Long ago, the United States Supreme Court (in a conflicts case arising out of Texas's restrictive concept of insurable interests) held that each state may choose to define insurable interests according to its own public policies. See Griffin v. McCoach, 313 U.S. 498, 504, 61 S.Ct. 1023, 1026, 85 L.Ed. 1481 (1941). Because the Texas Legislature has the power to declare the state's public policy, its pronouncements on insurable interests are binding on Texas courts. Castillo, 174 S.W.2d at 253.
The Opposite of "Liberal Construction"
With respect to its insurable interest enactments, the Legislature has declared they should be "liberally construed to effectuate [their] purposes," and are "not to be limited or restricted by previous declarations or holdings of the Courts of Texas defining the term insurable interest." Tex. Ins.Code art. 3.49-1, § 5. As the Tamez panel noted, this "intimates that the only limitations on insurable interest are those found in the statute." Tamez, 999 S.W.2d at 17. But that is not at all what the panel did.
The Texas Insurance Code does not require insurable interests generally, or state whether corporations have an insurable interest in the lives of service-level employees. Because of this silence, the Tamez panel held that pre-existing caselaw applied. In other words, unless the statute expressly bestows an insurable interest, that term is limited by previous court decisions. Definitionally, this is the exact opposite of "liberal construction." See Black's Law Dictionary 313 (6th ed.1990) (defining "strict construction" as "construction of a statute or other instrument according to its letter, which recognizes nothing that is not expressed ...").
We can be quite sure this is not what the Legislature intendednot in the 1950s (when it disavowed prior caselaw), and not in the 1990s. Five months after Tamez, the Legislature amended the Insurance Code to declare that an insurable interest is created by written consent of the person whose life is insured. See Tex. Ins.Code art. 3.49-1, § 3. Before 1999, that person also had to be the buyer of the insurance. In applying the same rule when a thirdparty bought the insurance, the Legislature said it intended "to clarify existing law and practice" and not "to alter or modify" pre-existing law.[3] Act 1999, 76th Leg., R.S., ch. 438, § 2, 1999 Tex. Gen. Laws 2817. This makes two points of legislative intent quite clear: (1) insurable interests extend beyond those expressly listed in the Insurance Code, and (2) when our legislators demanded liberal construction, they really meant it.
*661 Liberal construction requires "expand[ing] the meaning of the statute to meet cases which are clearly within the spirit or reason of the law ..." Black's Law Dictionary 313 (6th ed.1990). By repeated amendments, the Legislature has shown its intent to enforce insurance policies according to their terms, whether or not there is any pecuniary benefit or past history of enforcing similar policies. As our sister court has noted, the two public policies that historically supported insurable interest requirements (namely, temptation to murder the insured and prohibition of wagering contracts) have other safeguards that make their continued validity questionable. See Kennedy v. Laird, 503 S.W.2d 664, 665 (Tex.Civ.App.-Houston [1st Dist.] 1973, no writ) (noting Insurance Code article 21.23 bars recovery by an accomplice in insured's death, and wagers against actuarial tables are likely to be unprofitable absent secret knowledge of insured's health). Instead of requiring specific statutory authorization, we should instead ask whether any statute or prior case specifically bars NCS from asserting an insurable interest. See id. at 666 (awarding death benefits in pension to exwife because court could not find a law or public policy that required her to have an insurable interest at time of death).
The Common Law in the Spring of '42
Additionally, by resorting to caselaw to determine the bounds of insurable interests, the Tamez panel inadvertently returns us to the year 1942. It is true that in that year the Texas Supreme Court said that insurable interests "fall into three general classes," one of which was "a reasonable expectation of pecuniary benefit." See Drane v. Jefferson Standard Life Ins. Co., 139 Tex. 101, 104, 161 S.W.2d 1057, 1058-59 (1942). But due to the legislative expansion in insurable interests in the first half of the last century, cases since then almost invariably deal with the statutes. Indeed, between 1942 and 1998 (when Tamez was decided), only four cases mention Drane's three categories of insurable interests. Of these:
 one was reversed for applying Drane instead of the Insurance Code;[4]
 one has been overruled by statute;[5]
 one referred to Drane but did not apply it,[6] and
 one was remanded without analysis for a fuller development of the facts.[7]
*662 Other than the two cases that were overruled, no case ever used Drane to strike down an insurance policy for lack of an insurable interest.[8]
Thus, we know little about how the categories listed in Drane might have developed over the last sixty years, because they have almost never been cited or discussed. By requiring insurable interests to meet the Drane test (unless expressly mentioned in the Insurance Code), Tamez requires us to apply the common law as it was frozen in 1942.
But even that law was too narrowly applied. The Tamez panel expressed concern that NCS might profit from the death of one of its employees, though it had not in that case. See 999 S.W.2d at 19. But that is always possible when the matter insured is a life. Unlike a house, a car, or a boat, the economic value of a person cannot be precisely measured by reference to a market value. "Key man" life insurance policies are not void merely because, in some cases, the policy may prove more profitable than the insured.
In Drane itself, the court upheld Dorothy Drane's designation of her godson (to whom she was not otherwise related) as beneficiary and awarded him $10,510 in benefits (a huge sum in the 1930s), finding he had a pecuniary interest in her life because she had provided him with "perhaps more clothes than the average boy has," allowed him to charge items to her account at a drug store, occasionally drove him places, and was taking him "a radio, a cap and an apple pie" when she died in an auto accident. 161 S.W.2d at 1059. There is simply no way to read Texas common laweven in 1942to preclude an insurable interest because the policy benefits might exceed the beneficiary's pecuniary loss.
A Fair Extension of the Common Law
Times (not to mention the law) have changed since 1942. Convenience stores are far more ubiquitous now. So is crime. So are employee lawsuits. Today, an owner of hundreds of convenience stores can reasonably anticipate that one of its employees will be killed, and that the employees' relatives will then sue. Without a doubt, such an employer can reasonably expect a pecuniary loss connected with an employee's death, and thus ought to have an insurable interest.
Nothing in Drane suggests the categories listed there were intended to be exhaustive, or to be inflexibly applied. But that is what the Tamez panel did. First, the panel noted that Drane required a "pecuniary benefit or advantage," while NCS raised only the risk of "a substantial pecuniary loss." Tamez, 999 S.W.2d at 18. But financial loss upon death is the flip side of financial gain upon continued life. Modern authorities (other than Tamez) recognize this equivalence. See 3 Couch on Insurance § 43:13 (3rd ed.1995) (stating that to show an insurable interest, an employer "must have a reasonable expectation of substantial pecuniary gain through the continued life of the employee, or of a substantial pecuniary loss in case of his or her death") (emphasis added); Beard v. American Agency Life Ins. Co., 314 Md. 235, 550 A.2d 677, 682 (1988).
*663 Second, the panel ignored cases similar to Tamez. In Amalgamated Labor Life Ins. Co. v. Rowe, 421 S.W.2d 364 (Ky.1967), a Kentucky court held that a nonsubscribing employer had an insurable interest in the lives of its employees because of potential responsibility if they were injured. The Tamez panel was unpersuaded by the case because the Kentucky Legislature changed it later by statute. But a state's legislature can always expand or limit insurable interests according to current policies; this does not indicate why, without such an indication from the Texas Legislature, the panel felt it had to do so.
Closer to home, in North River Ins. Co., New York, N.Y. v. Fisher, a homeowner obtained an insurance policy on the life of an employee hired to cut his trees, naming himself as beneficiary but intending to pay the proceeds to the employee's wife in case the employee was injured or killed (as he was). 481 S.W.2d 443 (Tex.Civ.App.-Amarillo 1972, writ ref'd n.r.e.). Although the homeowner did not assert a pecuniary interest, the court ordered the policy proceeds paid to him because he intended (as did NCS) to pass the benefits on to those who did.[9]
The lesson of Tamez is that insurable interests do not exist unless a statute or prior case specifically recognizes them. This approach is certain to keep Texas in the rearguard of legal developments, as our common law will never change.

Why Worry?
I hesitate to write separately; but I fear the Tamez panel may not have realized it was creating a mass tort. Shortly before Tamez, the plaintiffs' attorney succeeded in a similar case for a different client in Stillwagoner v. Travelers Ins. Co., 979 S.W.2d 354 (Tex.App.-Tyler 1998, no pet.). Because he sued only the insurer and not the employer in DeLeon v. Lloyd's London, Certain Underwriters, 259 F.3d 344 (5th Cir.2001), he was less successful. Undeterred, he has gone on to bigger things. See Mayo v. Hartford Life Ins. Co., 193 F.Supp.2d 927 (S.D.Tex. 2002) (considering Tamez in an uncertified class action for benefits of policies covering employees of Wal-Mart Stores and Camelot Music). While I hesitate to discourage such entrepreneurial zeal, I wonder if the panel's desire to reach an equitable result in Tamez has lead to overreaching.
Events in the short time since Tamez was issued in 1998 suggest we should reconsider it. Do we really mean to say employers of bond traders, pilots, and flight attendants have no insurable interest in the lives of their employees, because they are not "key men"? Should we punish companies for insuring against potential losses, even though unprotected risks may lead to bankruptcy, unemployment, and plummeting stock prices that ruin stockholders and employee pensions alike?
Sixty years before Tamez, the Supreme Court of Mississippi held that a non-subscribing employer had an insurable interest in the lives of his service-level employees. I cannot sum up the argument any better:
Under conditions and practices which appertained in former days, the question [whether an employer has an insurable interest in an ordinary employee] would perhaps have been answered by most of the courts in the negative. But in this day and under modern and more enlightened practices, employers do not throw injured employees to the dogs *664 when the employer has no liability for the injury. Employers do not first stop to inquire whether they are legally liable for the injury, but, at their own expense, or largely so, they take the injured employee to a hospital, or otherwise furnish all necessary and suitable care and attention, for such reasonable time as is required, and, if death results, a decent burial is provided  all this although the employer is not legally liable at all. This is sufficient as a foundation for an insurable interest ...
Neely v. Pigford, 181 Miss. 306, 178 So. 913, 913 (1938).
I fear the Mississippi court of 1938 was more modern and enlightened than we.
NOTES
[1] See Tamez, 999 S.W.2d at 22. Indeed, NCS reportedly paid $4.1 million to some of the Tamez family members. See Robert Elder, Jr., The Death Deductible; Stop N Go Workers' Deaths Help Pay for Company's Defenses, The Texas Lawyer. April 15, 1996, p. 1.
[2] In McBride v. Clayton, 140 Tex. 71, 76, 166 S.W.2d 125, 128 (1942), the court noted a 1921 enactment giving corporations an insurable interest in "the life of any officer or stockholder." Nevertheless, the court refused to enforce a corporation's policy on the life of its president, because at the time of his death the business had been shut down, thus making the policy more valuable than his services. 166 S.W.2d at 130. Even though the statute placed no limitation on "insurable interests" granted to corporations, the court assumed the Legislature intended to limit the term in accordance with prior caselaw. Id. at 128. Perhaps this is why the Legislature was more explicit about its intent to repudiate prior caselaw concerning insurable interests in 1953. See Tex. Ins.Code art. 3.49-1, § 5.
[3] The Legislature provided for prospective application of the amendment to policies issued or renewed after January 1, 2000. Act 1999, 76th Leg., R.S., ch. 438, § 3, 1999 Tex. Gen. Laws 2817. But as a statement of the public policy of Texas, it guides judicial interpretation of earlier policies as well. See McCain v. Yost, 155 Tex. 174, 177, 284 S.W.2d 898, 900 (Tex.1955) (applying 1953 amendment, even though it was prospective only, to insurance policy issued in 1946 because it expressed state's public policy).
[4] Allen v. Brewster, 172 S.W.2d 192 (Tex.Civ.App.-Dallas 1943), rev'd, 142 Tex. 127, 176 S.W.2d 311 (1943).
[5] In Biggs v. Washington Nat'l.Ins. Co., the court held a beneficiary named by the insured as his "wife"although he was actually married to someone elsehad no insurable interest because any pecuniary benefits she expected from their "meretricious and illicit" relationship were unlawful. 275 S.W.2d 566, 569 (Tex.Civ.App.-Waco 1955, no writ). The Insurance Code now overrules this holding. See Tex. Ins.Code art. 3.49-1, § 1.
[6] In Empire Life Ins. Co. of America v. Moody, 584 S.W.2d 855 (Tex.1979), the Court indicated an insured's assignment of his life interest in trust income of over $4 million gave the assignee an insurable interest. 584 S.W.2d at 859. The panel in Tamez pointed to Empire Life as proof that "courts have continued to apply prior case law regarding insurable interest" after the enactment of Insurance Code section 3.49-1. Tamez at 18. But as the Tamez panel elsewhere noted, Empire Life was "not addressing the issue of insurable interest" and merely "referred" to Drane's definitions. Id. at 17, 18. The actual holding in Empire Life was that the claimant had an insurable interest pursuant to section 3.49-1. See Empire Life, 584 S.W.2d at 860.
[7] United Benefit Life Ins. Co. of Omaha v. Boyd, 453 S.W.2d 332, 334 (Tex.Civ.App.-El Paso 1970), writ ref'd n.r.e., 457 S.W.2d 893 (Tex.1970).
[8] The court did not rely on pecuniary interest in American Cas. & Life Co. v. Chambers, 172 S.W.2d 122 (Tex.Civ.App.-Fort Worth 1943, writ dism'd w.o.j.), finding an insurable interest because of a relationship that "did not arise under the fact of cold and business-like dealings; there was something far more beautiful and abiding in the motives that brought this old man into the Chambers home, in his declining years." Id. at 124. The court said it would not "under such heart-appealing and human circumstances, look upon the status of these persons as that of mere debtor and creditor." Id.
[9] There is no analysis of the direct pecuniary interest of the beneficiary because the homeowner stipulated that he had no insurable interest. Fisher, 481 S.W.2d at 445.