Order and Dissenting Opinion filed December 5, 2002; Majority,
Concurring and Dissenting Opinions filed April 25, 2002, Ordere









 

Order and Dissenting Opinion filed December 5, 2002;
Majority, Concurring and Dissenting Opinions filed April 25, 2002, Ordered
Withdrawn.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00391-CV

____________

 

CERTAIN UNDERWRITERS AT LLOYD=S, LONDON, C.M. OWEN, P.M. DONNER, D.W. SEAR, T.W.
BRIEN, J.D. LLOYD, P.W. MURRELL, M.J. DAVIS, J.H. DAVIES, R.A. LISSENDEN,
R.J.H. PAYNE, J.M. DONNER, D.R. NEIL, V.W. BROAD, A.P. TARGETT, A.J. AVERY,
P.G. BUTLER, P.J.M. BATTLE, R.J. DACKOMBE, J.W. DENDY, R.D. HAZELL, J.B. HOSE,
J.P. TILLING, S.J. BURNHOPE, J.S. DARLING, R.J. MORSE, G.A. MORESE, G.A.
ARGENT, G.M. CHICHESTER, D.A. THOMAS, S.D. CHAPPEL, B.P.D. KELLETT, A.F.
WHITBREAD, P.A. MINTER, T.G. GREEN, B.P. BARTELL, P.E. HOLLAND, J.H. BRISTOW,
AND NATIONAL CONVENIENCE STORES, INC., Appellants/Cross-Appellees

V.

ANGELA M. SMITH, INDIVIDUALLY AND AS NEXT FRIEND OF
BRANDON WILLIAM HENDRIX, A MINOR, Appellees/Cross-Appellants

 



 

On
Appeal from the 333rd District Court 

Harris
County, Texas

Trial
Court Cause No. 96-52348

 



 

O
R D E R

This
Court issued its original opinions in this case on April 25, 2002.  The parties filed a joint motion to abate the
appeal and remand the case to the trial court for approval of a settlement
involving the minor.  We granted the
motion and abated the appeal.








On September 23, 2002, the parties filed a joint motion to
dismiss their respective appeals because the case has been settled and the
trial court has approved the settlement. 
See Tex. R. App. P. 42.1.  On October 3, 2002, this Court granted the
motion.  In our opinion of October 3,
2002, dismissing the appeal, we ordered the judgment of April 25, 2002 vacated,
but we did not withdraw the Court=s opinions issued on April 25,
2002.  See Tex. R. App. P. 42.1(c) (in dismissing a proceeding, the
court of appeals will determine whether to withdraw any opinion it has already
issued).  

On October 9, 2002, Angela M. Smith filed a motion for
rehearing asking that the Court vacate and withdraw its opinions of April 25,
2002.  On November 15, 2002, National
Convenience Stores, Inc. and Certain Underwriters at Lloyd=s, London filed a response to the
motion for rehearing, taking no position on whether the Court should withdraw
its opinions.  We grant Angela M. Smith=s motion.

Accordingly, we order the Majority, Concurring, and
Dissenting Opinions issued April 25, 2002, in this case withdrawn.

 

PER CURIAM

Order filed December 5, 2002.

Panel consists of Chief Justice Brister
and Justices Fowler and Seymore.  (Brister, C.J.,
dissenting.)

Publish C Tex. R. App. P. 47.3(b).








Dissenting Opinion on Order
Withdrawing Opinions filed December 5, 2002.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00391-CV

____________

 

CERTAIN UNDERWRITERS AT LLOYD=S LONDON, C.M. OWEN, P.M. DONNER, D.W. SEAR, T.W.
BRIEN, J.D. LLOYD, P.W. MURRELL, M.J. DAVIS, J.H. DAVIES, R.A. LISSENDEN,
R.J.H. PAYNE, J.M. DONNER, D.R. NEIL, V.W. BROAD, A.P. TARGETT, A.J. AVERY,
P.G. BUTLER, P.J.M. BATTLE, R.J. DACKOMBE, J.W. DENDY, R.D. HAZELL, J.B. HOSE,
J.P. TILLING, S.J. BURNHOPE, J.S. DARLING, R.J. MORSE, G.A. MORESE, G.A.
ARGENT, G.M. CHICHESTER, D.A. THOMAS, S.D. CHAPPEL, B.P.D. KELLETT, A.F.
WHITBREAD, P.A. MINTER, T.G. GREEN, B.P. BARTELL, P.E. HOLLAND, J.H. BRISTOW
AND NATIONAL CONVENIENCE STORES, INC, 

Appellants/Cross-Appellees

 

V.

 

ANGELA M. SMITH, INDIVIDUALLY AND AS
NEXT FRIEND OF BRANDON WILLIAM HENDRIX, A MINOR, Appellees/Cross-Appellants

 



 

On
Appeal from the 333rd District Court 

Harris County, Texas

Trial
Court Cause No. 96-52348

 



 

D I S S E N T I N G   O P I N I O N   ON

O
R D E R   W I T H D R A W I N G   O P I N I O N S








This case
presents facts almost identical to those in Tamez
v. Certain Underwriters at Lloyd=s, London, 999
S.W.2d 12 (Tex. App.CHouston [14th Dist.] 1998, pet. denied).  After six months of drafting, this court was
prepared to issue three opinions on April 25, 2002:  a majority opinion by Justice Fowler
following Tamez, a dissenting opinion by
Justice Seymore finding Tamez
wrongly decided, and my concurring opinion that follows as an appendix.

A few days
before issuance, appellees=
counsel notified the court that the parties had reached an agreement to settle
the case.  Because a minor was involved,
they could not settle the case without court approval.  See Tex.
R. Civ. P. 44; Byrd v. Woodruff, 891 S.W.2d 689, 705 (Tex.  App.CDallas 1994, writ dism=d
agr.).  This
did not occur until four months later. 
The appeal was not rendered moot merely because a settlement was
pending.  See Castano
v. American Tobacco Co., 84 F.3d 734, 737 n.3 (5th Cir. 1996) (refusing to grant motion to
dismiss due to pending settlement). 
Accordingly, our opinions issued as scheduled.

Appellees= counsel now requests that we withdraw our
opinions.  See Tex. R. App. P. 42.1(c).  As discussed in the appendix, I believe the
very faulty reasoning of Tamez is being
used to create a mass tort.  Under these
circumstances, the court does a disservice to the public and the law by
exercising its discretion to withdraw the decisions in this case.  See Tex.
R. App. P. 47.4(b) & (c) (calling for publication if an opinion Ainvolves a legal issue of continuing public interest@ or Acriticizes existing law@).  Thus, I respectfully dissent.

 

 

 

 

/s/        Scott Brister

Chief Justice

 

Dissenting
Opinion on Order Withdrawing Opinions filed December 5, 2002.

Panel consists of
Chief Justice Brister and Justices Fowler and Seymore.

Publish C Tex.
R. App. P. 47.3(b).

 

                                                                              








                                                              A P P E N D
I X

                                 C
O N C U R R I N G  
O P I N I O N

As the trial judge whose summary
judgment was reversed by this Court in Tamez
v. Certain Underwriters at Lloyd=s, London, 999 S.W.2d 12 (Tex. App.CHouston [14th  Dist.] 1998, pet. denied), I confess I remain
unconvinced.  I agree an employer must
show an Ainsurable interest@ in
its employees; I disagree that term should be limited to the meaning it had
in 1942.  Perhaps in 1942, companies
never expected to spend a dime when employees died on the job, except for Akey
men.@  If so, those days are over.  Nevertheless, because Tamez
governs this appeal short of en banc consideration, see O'Connor v.
First Court of Appeals, 837 S.W.2d 94, 96 (Tex. 1992) (stating decision of
panel constitutes decision of the whole court unless court chooses to hear case
en banc), I reluctantly concur.

Following its bankruptcy filing in
1991, National Convenience Stores, Inc. (ANCS@) opted out of the Texas workers
compensation system because of high premiums. 
Instead, NCS obtained liability insurance totaling $75 million to cover
employee claims.  This coverage included
a deductible of $250,000 per claim. 
Rather than leaving this risk uncovered, NCS obtained a policy payable
in that amount upon accidental death in the course of employment of any of its
officers or employees.

In Tamez,
a panel of this Court punished NCS for its prudence by requiring it to forfeit
the entire policy benefit of $250,000 (even though it had already paid more
than that to the Tamez family),[1]
not to mention all premiums, and pay the plaintiffs= attorney=s fees and interest as well.  The panel found NCS had no insurable interest
in the lives of its service-level employees because (1) the Texas Insurance
Code was silent on the matter, and (2) it did not fit a 1942 definition of the
term.  I
believe neither reason is persuasive, as set forth below.

 








                                     The
Expansion of Insurable Interests

This is not the first time Texas has brought up the rear in
insurance practices.  Texas
was the last state that strictly limited insurable interests to the boundaries of the common
law.  See Kennedy v. Laird, 503 S.W.2d 664,
665 (Tex. Civ. App.CHouston [1st Dist.] 1973,
no writ).  With some resistance from the
courts,[2]
the Texas Legislature has repeatedly expanded insurable interests far beyond
those limits:

$                  
In 1921, the Legislature gave corporations and
partnerships an insurable interest in their officers, stockholders, or
partners.  See Tex. Ins. Code art. 3.49.  

 

$                  
In 1931, the Legislature allowed members of fraternal
societies to bestow an insurable interest on any person or business by simply
naming them as beneficiary.  See id. art.
10.01 et seq.; Castillo v. Canales, 141 Tex. 479, 485-86, 174 S.W.2d
251, 254 (1943).

 

$                  
In 1953, the Legislature granted the same broad power to
all insureds to name any beneficiary they chose.  Tex.
Ins. Code art. 3.49-1, '' 1, 2.  

 

$                  
In 1999, the Legislature declared that anyone (person
or corporation) had an insurable interest in anyone else by simply
obtaining their written consent.  Id. art.
3.49-1, ' 3.

 








There is no question the Legislature may expand the scope of
insurable interests, or even discard the requirement altogether.  Long ago, the United States Supreme Court (in
a conflicts case arising out of Texas=s restrictive concept of insurable interests) held that each
state may choose to define insurable interests according to its own public
policies.  See Griffin v. McCoach, 313 U.S. 498, 504, 61 S.Ct.
1023, 1026 (1941).  Because the Texas Legislature has the
power to declare the state=s public policy, its pronouncements on insurable interests
are binding on Texas courts.  Castillo,
174 S.W.2d at 253. 

The Opposite of ALiberal Construction@

With respect to its insurable
interest enactments, the Legislature has declared they should
be Aliberally
construed to effectuate [their] purposes,@
and are Anot
to be limited or restricted by previous declarations or holdings of the Courts
of Texas defining the term insurable interest.@ 
Tex. Ins. Code art. 3.49-1, ' 5. 
As the Tamez panel noted, this Aintimates that the only limitations
on insurable interest are those found in the statute.@ Tamez,
999 S.W.2d at 17.  But that is not at all
what the panel did.

The Texas Insurance Code does not
require insurable interests generally, or state whether corporations have an
insurable interest in the lives of service-level employees.  Because of this silence, the Tamez panel held that pre-existing caselaw applied.  In
other words, unless the statute expressly bestows an insurable interest, that
term is limited by previous court decisions. 
Definitionally, this is the exact opposite of Aliberal construction.@ 
See Black=s Law
Dictionary 313 (6th ed.
1990) (defining Astrict construction@ as Aconstruction of a statute or other
instrument according to its letter, which recognizes nothing that is not
expressed . . .@).








We can be quite sure this is not what
the Legislature intendedCnot in the 1950s (when it disavowed prior caselaw),
and not in the 1990s.  Five months after Tamez, the Legislature amended the Insurance Code to
declare that an insurable interest is created by written consent of the person
whose life is insured.  See Tex. Ins. Code art. 3.49-1, ' 3.  Before 1999, that person also had to be the buyer of the
insurance.  In applying the same rule
when a third-party bought the insurance, the Legislature said it intended Ato clarify existing law and practice@ and not Ato alter or modify@ pre-existing law.[3]  Act 1999, 76th Leg., R.S., ch. 438, ' 2, 1999 Tex. Gen. Laws 2817. 
This makes two points of legislative intent quite clear: (1) insurable
interests extend beyond those expressly listed in the Insurance Code, and (2)
when our legislators demanded liberal construction, they really meant it. 

Liberal
construction requires Aexpand[ing] the meaning of the statute to meet cases which are
clearly within the spirit or reason of the law. . .@  Black=s Law
Dictionary 313 (6th ed.
1990).  By repeated
amendments, the Legislature has shown its intent to enforce insurance policies
according to their terms, whether or not there is any pecuniary benefit or past
history of enforcing similar policies.  As our sister court has noted, the
two public policies that historically supported insurable interest requirements
(namely, temptation to murder the insured and prohibition of wagering
contracts) have other safeguards that make their continued validity questionable.  See Kennedy v. Laird,
503 S.W.2d 664, 665 (Tex. Civ. App.CHouston [1st Dist.] 1973,
no writ) (noting Insurance Code article 21.23 bars recovery by an accomplice in
insured=s death,
and wagers against actuarial tables are likely to be unprofitable absent secret
knowledge of insured=s
health).  Instead of requiring specific
statutory authorization, we should instead ask whether any statute or prior
case specifically bars NCS from asserting an insurable interest.  See id. at 666 (awarding death benefits in
pension to ex-wife because court could not find a law or public policy that
required her to have an insurable interest at time of death). 

The Common Law in the Spring of >42








Additionally, by resorting to caselaw to determine the bounds of insurable interests, the
Tamez panel inadvertently returns us to
the year 1942.  It is true that in that
year the Texas Supreme Court said that insurable interests Afall into three general classes,@ one of which was Aa reasonable expectation of pecuniary
benefit.@  See Drane v.
Jefferson Standard Life Ins. Co., 131 Tex. 101, 104, 161 S.W.2d 1057,
1058-59 (1942).  But due to the
legislative expansion in insurable interests in the first half of the last century,
cases since then almost invariably deal with the statutes.  Indeed, between 1942 and 1998 (when Tamez was decided), only four cases mention Drane=s three categories of insurable
interests.  Of these:

$                  
one
was reversed for applying Drane instead
of the Insurance Code;[4]

$                  
one
has been overruled by statute;[5]


$                  
one
referred to Drane but did not apply it,[6]
and

$                  
one was remanded
without analysis for a fuller development of the facts.[7]

 

Other than the two cases that were
overruled, no case ever used Drane to
strike down an insurance policy for lack of an insurable interest.[8]








Thus, we know little about how the
categories listed in Drane might have
developed over the last sixty years, because they have almost never been cited
or discussed.  By requiring insurable
interests to meet the Drane test
(unless expressly mentioned in the Insurance Code), Tamez
requires us to apply the common law as it was frozen in 1942.

But even that law was too narrowly
applied.  The Tamez
panel expressed concern that NCS might profit from the death of one of
its employees, though it had not in that case. 
See 999 S.W.2d at 19.  But
that is always possible when the matter insured is a life.  Unlike a house, a car, or a boat, the
economic value of a person cannot be precisely measured by reference to a
market value.  AKey man@ life insurance policies are not void
merely because, in some cases, the policy may prove more profitable than the
insured. 

In Drane
itself, the court upheld Dorothy Drane=s designation of her godson (to whom
she was not otherwise related) as beneficiary and awarded him $10,510 in
benefits (a huge sum in the 1930s), finding he had a pecuniary interest in her
life because she had provided him with Aperhaps more clothes than the average
boy has,@ allowed him to charge items to her
account at a drug store, occasionally drove him places, and was taking him Aa radio, a cap and an apple pie@ when she died in an auto
accident.  161 S.W.2d at 1059.  There is simply no way to read Texas common
lawCeven in 1942Cto preclude an insurable interest
because the policy benefits might exceed the beneficiary=s pecuniary loss.

A Fair Extension of the Common Law

Times (not to mention the law) have
changed since 1942.  Convenience stores
are far more ubiquitous now.  So is
crime.  So are employee lawsuits.  Today, an owner of hundreds of convenience
stores can reasonably anticipate that one of its employees will be killed, and
that the employees= relatives will then sue. 
Without a doubt, such an employer can reasonably expect a pecuniary loss
connected with an employee=s death, and thus ought to have an insurable interest. 








Nothing in Drane
suggests the categories listed there were intended to be exhaustive, or to
be inflexibly applied.  But that is what
the Tamez panel did.  First, the panel noted that Drane required a Apecuniary
benefit or advantage,@
while NCS raised only the risk of Aa
substantial pecuniary loss.@ Tamez, 999 S.W.2d at 18.  But financial loss upon death is the flip side of
financial gain upon continued life. 
Modern authorities (other than Tamez)
recognize this equivalence.  See 3
Couch on Insurance  '
43:13 (3rd ed. 1995) (stating that to show an insurable interest, an employer Amust have a reasonable
expectation of substantial pecuniary gain through the continued life of the
employee, or of a substantial pecuniary loss in case of his or her death)
(emphasis added); Beard
v. American Agency Life Ins. Co., 
550 A.2d 677, 682 (Md. 1988).

Second, the panel ignored cases similar
to Tamez. 
In Amalgamated
Labor Life Ins. Co. v. Rowe, 421 S.W.2d 364 (Ky. 1967), a Kentucky court
held that a non-subscribing employer had an insurable interest in the lives of
its employees because of potential responsibility if they were injured.  The Tamez
panel was unpersuaded by the case because the Kentucky
Legislature changed it later by statute. 
But a state=s legislature can always expand or limit insurable interests
according to current policies; this does not indicate why, without such an
indication from the Texas Legislature, the panel felt it had to do so.

Closer
to home, in North River Ins. Co., New York, N. Y. v. Fisher, a homeowner
obtained an insurance policy on the life of an employee hired to cut his trees,
naming himself as beneficiary but intending to pay the proceeds to the employee=s wife in case the employee
was injured or killed (as he was).  481
S.W.2d 443 (Tex. Civ. App.CAmarillo 1972, writ ref=d n.r.e.). 
Although the homeowner did not assert a pecuniary interest, the court
ordered the policy proceeds paid to him because he intended (as did NCS) to
pass the benefits on to those who did.[9]








The
lesson of Tamez is that insurable
interests do not exist unless a statute or prior case specifically recognizes
them.  This approach is certain to keep
Texas in the rearguard of legal developments, as our common law will never
change.

Why Worry?

I hesitate to write separately; but I
fear the Tamez panel may not have
realized it was creating a mass tort. 
Shortly before Tamez, the plaintiffs= attorney succeeded in a similar case
for a different client in Stillwagoner v.
Travelers Ins. Co., 979 S.W.2d 354 (Tex. App.CTyler 1998, no pet.).  Because he sued only the insurer and not the
employer in DeLeon v. Lloyd=s London, Certain Underwriters, 259 F.3d 344 (5th Cir. 2001), he
was less successful.  Undeterred, he has
gone on to bigger things.  See Mayo v.
Hartford Life Ins. Co., No. H-01-2139, 2002 WL 449032 (S.D. Tex. Mar. 5,
2002) (considering Tamez in an
uncertified class action for benefits of policies covering employees of
Wal-Mart Stores and Camelot Music). 
While I hesitate to discourage such entrepreneurial zeal, I wonder if
the panel=s desire to reach an equitable result
in Tamez has lead to overreaching.

Events in the short time since Tamez was issued in 1998 suggest we should
reconsider it.  Do we really mean to say
employers of bond traders, pilots, and flight attendants have no insurable
interest in the lives of their employees, because they are not Akey men@? 
Should we punish companies for insuring against potential losses, even
though unprotected risks may lead to bankruptcy, unemployment, and plummeting
stock prices that ruin stockholders and employee pensions alike?

Sixty years before Tamez, the Supreme Court of Mississippi held that a
non-subscribing employer had an insurable interest in the lives of his
service-level employees.  I cannot sum up
the argument any better:








Under conditions and
practices which appertained in former days, the question [whether an employer
has an insurable interest in an ordinary employee] would perhaps have been
answered by most of the courts in the negative. 
But in this day and under modern and more enlightened practices,
employers do not throw injured employees to the dogs when the employer has no
liability for the injury.  Employers do
not first stop to inquire whether they are legally liable for the injury, but,
at their own expense, or largely so, they take the injured employee to a
hospital, or otherwise furnish all necessary and suitable care and attention,
for such reasonable time as is required, and, if death results, a decent burial
is provided‑‑all this although the employer is not legally liable
at all.  This is sufficient as a
foundation for an insurable interest . . .

 

Neely
v. Pigford, 178 So. 913, 913
(Miss. 1938).  

I
fear the Mississippi court of 1938 was more modern and enlightened than we.

 

 











[1]   See Tamez, 999 S.W.2d at 22.  Indeed, NCS reportedly paid $4.1 million to
some of the Tamez family members.  See Robert Elder, Jr., The Death
Deductible; Stop N Go Workers=
Deaths Help Pay for Company=s
Defenses, The Texas Lawyer, April 15, 1996, p. 1.





[2]   In McBride
v. Clayton, 140 Tex. 71, 76, 166 S.W.2d 125, 128 (1942), the court noted a
1921 enactment giving corporations an insurable interest in Athe life of any officer or stockholder.@  Nevertheless,
the court refused to enforce a corporation=s policy
on the life of its president, because at the time of his death the business had
been shut down, thus making the policy more valuable than his services. 166
S.W.2d at 130.  Even though the statute
placed no limitation on Ainsurable interests@ granted
to corporations, the court assumed the Legislature intended to limit the term
in accordance with prior caselaw.  Id. at 128.  Perhaps this is why the Legislature was more
explicit about its intent to repudiate prior caselaw
concerning insurable interests in 1953.  See
Tex. Ins. Code art. 3.49-1, ' 5.





[3]   The
Legislature provided for prospective application of the amendment to policies
issued or renewed after January 1, 2000. 
Act 1999, 76th Leg., R.S., ch. 438, ' 3, 1999 Tex. Gen. Laws 2817.  But as a statement of the public policy of
Texas, it guides judicial interpretation of earlier policies as well.  See McCain v. Yost, 155 Tex. 174, 177,
284 S.W.2d 898, 900 (Tex. 1955)
(applying 1953 amendment, even though it was prospective only, to insurance
policy issued in 1946 because it expressed state=s public
policy).





[4]   Allen v.
Brewster, 172 S.W.2d 192 (Tex. Civ. App.CDallas 1943), rev'd,
142 Tex. 127, 176 S.W.2d 311 (1944).





[5]   In Biggs v.
Washington Nat=l.Ins. Co., the court held a
beneficiary named by the insured as his Awife@Calthough he was
actually married to someone elseChad no insurable
interest because any pecuniary benefits she expected from their Ameretricious and
illicit@ relationship were unlawful.  275 S.W.2d 566, 569 (Tex. Civ.
App.CWaco 1955, no writ).  The Insurance Code now overrules this
holding.  See Tex. Ins. Code art. 3.49-1, ' 1. 





[6]   In Empire
Life Ins. Co. of America v. Moody, 584 S.W.2d 855 (Tex. 1979), the Court
indicated an insured=s assignment of his life interest in trust income of
over $4 million gave the assignee an insurable interest.  584 S.W.2d at 859.  The panel in Tamez
pointed to Empire Life as proof that Acourts
have continued to apply prior case law regarding insurable interest@ after the enactment of Insurance Code section
3.49-1.  Tamez
at 18.  But as the Tamez
panel elsewhere noted, Empire Life was Anot addressing the issue of insurable interest@ and merely Areferred@ to Drane=s definitions.  Id. at 17, 18.  The actual holding in Empire Life was
that the claimant had an insurable interest pursuant to section 3.49-1.  See Empire Life, 584 S.W.2d at 860.





[7]   United Benefit Life
Ins. Co. of Omaha v. Boyd, 453 S.W.2d 332, 334 (Tex. Civ. App.CEl Paso 1970), writ
ref=d n.r.e., 457 S.W.2d 893
(Tex. 1970). 





[8]   The court did
not rely on pecuniary interest in American Cas.
& Life Co. v. Chambers, 172 S.W.2d 122 (Tex. Civ.
App.CFort Worth 1943, writ dism=d w.o.j.), finding an
insurable interest because of a relationship that Adid not arise under the fact of cold and business‑like
dealings; there was something far more beautiful and abiding in the motives
that brought this old man into the Chambers home, in his declining years.@  Id. at
124.  The court said it would not Aunder such heart‑appealing and human
circumstances, look upon the status of these persons as that of mere debtor and
creditor.@  Id. 





[9]   There is no analysis
of the direct pecuniary interest of the beneficiary because the homeowner
stipulated that he had no insurable interest. 
Fisher, 481 S.W.2d at 445.